92 Cal.Rptr.2d 20 (2000)
77 Cal.App.4th 799
In re ZACHARY G., a Person Coming Under the Juvenile Court Law.
San Diego County Health And Human Services Agency, Plaintiff and Respondent,
v.
Gala G., Defendant and Appellant.
No. D033567.
Court of Appeal, Fourth District, Division One.
December 20, 1999.
As Modified January 19, 2000.
Review Denied March 15, 2000.
*22 Kathleen M. Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.
Christopher Blake, San Diego, under appointment by the Court of Appeal, for the Minor.
*21 McDONALD, J.
Gala G. (Mother) filed a petition pursuant to Welfare and Institutions Code section 388[1] (hereafter the section 388 petition), alleging changed circumstances and seeking to modify the order terminating reunification services for her child Zachary G. (Zachary). The court denied a hearing on the section 388 petition and thereafter terminated Mother's parental rights at the section 366.26 hearing (the .26 hearing). Mother contends both rulings were erroneous.

I

FACTUAL AND PROCEDURAL HISTORY

A. Mother's History

Prior to Zachary's birth Mother had two children, including Austin, who had been declared dependents of the Juvenile Court. Austin was declared a dependent in 1995 because of severe physical abuse by Austin's father, David L. (Father), and domestic violence between Mother and Father. Austin lived with his maternal grandparents, who planned to adopt him.

B. The Dependency And Reunification Phase

Zachary was born November 7, 1997, and taken into protective custody. The court declared Zachary a dependent because it found true the petition's allegations that a sibling (Austin) suffered severe physical abuse by Father, there was a substantial risk Zachary would suffer similar abuse and Mother was unable to protect Zachary (§ 300, subd. (j)). The court placed Zachary with the maternal grandmother and ordered Mother and Father to comply with the provisions of their reunification plans.
*23 In the report prepared for the June 1998 six-month review hearing, the social worker reported Mother was homeless and staying with various friends. Mother had stopped living with Father in late November or early December 1997, and had completed a domestic violence program. In late March 1998 she resumed living with Father but left him again in late April 1998 after he bit her on the nose during an argument. The court continued Zachary as a dependent in out-of-home custody.
By late July 1998 Mother and Father had resumed living together. However, Father was arrested for assaulting Mother on July 31, 1998, was released from custody on August 4, 1998, immediately assaulted Mother again and was rearrested on August 5, 1998.
In the report prepared for the 12-month review hearing, the social worker reported that in June 1998 Mother was not attending therapy regularly; she had a pattern of attending therapy when she was not living with Father and ceasing therapy when she was. Mother resumed living with Father after he was released from custody following his August 1998 arrest, and they lived together until late November or early December 1998. A psychologist evaluated Mother's condition in September 1998 and concluded she was of borderline intelligence and was a poor risk to protect her children from harm because of her low cognitive abilities and strong dependency needs. The psychologist diagnosed Mother's condition as a dependent personality disorder and reported that unless Mother could function without Father in her life for at least one year, plans should be made for Zachary to be adopted. Mother's therapist likewise concluded she had a dependent personality disorder, and that she had made progress during the first half of 1998 but regressed when she stopped regularly attending therapy after June 1998.
The social worker recommended reunification services be terminated and a .26 hearing be scheduled. At the January 1999 12-month review hearing, the parents submitted on the recommendations. The court terminated reunification services and set a .26 hearing.

C. The Section 388 Petition And The .26 Hearing

The social worker's assessment prepared for the .26 hearing reported Mother had regular supervised visits with Zachary and interacted with him appropriately. However, Zachary interacted equally well with all the adults, did not seek out Mother for attention or affection, and was not upset when the visits ended. The caretakers reported Zachary turned to them to meet his needs 90 percent of the time during the supervised visits. The social worker stated Zachary's relationship to Mother was not a parental relationship, Zachary looked to his caretakers for comfort and to meet his needs and called his caretakers "mom" and "dad." The social worker recommended parental rights be terminated to allow Zachary to be adopted by his caretakers.

1. The Section 388 Petition.

On June 1, 1999, three days before the .26 hearing, Mother filed a section 388 petition seeking return of Zachary to her custody. The petition alleged as changed circumstances that Mother had been visiting with Zachary on a consistent and regular basis, had weekly in-home services for a newborn sibling, and had engaged in biweekly therapy sessions. The therapist reported Mother had shown sustained progress, showed no inclination to return to Father, had good parenting skills, and was fully capable of adequately caring for and safeguarding Zachary were he returned to her care.
On June 1, 1999, the court denied the section 388 petition without a hearing. At the .26 hearing on June 4, 1999, the court noted Mother had subsequently filed additional evidence in the form of a bonding *24 study.[2] The court, after hearing argument on whether the augmented showing met the prima facie burden under section 388, affirmed its order denying a hearing on the section 388 petition because Mother's evidence did not prima facie show that returning Zachary to Mother's care was in Zachary's best interests.

2. The Section .26 Hearing.

The court considered the bonding study as well as the assessment report, and Mother submitted on the reports. After satisfying itself that the caretaker-grandparents were willing to adopt Zachary, and that their willingness was not the product of express or implied threats that respondent would remove Zachary and place him with strangers if they did not agree to adopt him, the court found Zachary was likely to be adopted if parental rights were terminated and that none of the exceptions under section 366.26, subdivision (c)(1) applied.

II

ANALYSIS

A. The Trial Court Did Not Abuse Its Discretion By Denying Mother's Section 388 Petition

Mother argues that her section 388 petition made a prima facie showing of changed circumstances and entitled her to a full hearing on her petition. Accordingly, she claims it was error for the trial court to deny her section 388 petition without a hearing merely because she did not include within her prima facie showing evidence that Zachary's return to her custody would be in his best interests.

1. Legal Principles

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. (In re Stephanie M. (1994) 7 Cal.4th 295, 316-317, 27 Cal.Rptr.2d 595, 867 P.2d 706.) A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. (In re Marilyn H. (1993) 5 Cal.4th 295, 309-310, 19 Cal. Rptr.2d 544, 851 P.2d 826.)
However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. (In re Edward H. (1996) 43 Cal.App.4th 584, 592-594, 50 Cal. Rptr.2d 745; In re Jamika W. (1997) 54 Cal.App.4th 1446, 1450-1451, 63 Cal. Rptr.2d 513.) The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. (In re Edward H., supra, at p. 594, 50 Cal.Rptr.2d 745.)
Mother argues that because she showed changed circumstances, the trial court erred by requiring an additional prima facie showing that return of Zachary to her custody would be in Zachary's best interests. However, section 388 contemplates that a petitioner make a prima facie showing of both elements to trigger an *25 evidentiary hearing on the petition. Section 388 provides in part that
"Any parent ... may, upon grounds of change of circumstance or new evidence, petition ... for a hearing to change, modify, or set aside any order of court previously made.... The petition shall be verified and ... shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order....

"If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held...." (Emphasis added.)
The conditional language of section 388 makes clear that the hearing is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order, which necessarily contemplates that a court need not order a hearing if this element is absent from the showing made by the petition.[3] (In re Elizabeth M. (1997) 52 Cal.App.4th 318, 323, 60 Cal.Rptr.2d 557.)
Mother relies on two cases to support her contention that a parent is entitled to a section 388 hearing solely on a showing of changed circumstances. However, those cases are distinguishable. In In re Jeremy W. (1992) 3 Cal.App.4th 1407, 5 Cal. Rptr.2d 148, the mother successfully complied with her court-ordered reunification plan, with the sole exception of maintaining stable housing. The court at the 12-month review hearing concluded her default in the housing element meant there was no likelihood of reunification within the next 6 months and therefore terminated reunification services. Within five months, mother submitted evidence that she continued to comply with all elements of the reunification plan, had cured the only remaining issue (housing) that had prevented earlier reunification, the child wished to be reunited with the mother, there was a significant risk of harm to the child were he separated from the mother, and he could be returned to her full physical custody within one month. On this evidentiary showing the Jeremy W. court concluded it was error to deny the parent a hearing. (Id. at pp. 1415-1416, 5 Cal. Rptr.2d 148.) However, the petition's allegations in Jeremy W. did support an implied allegation that the best interests of the child would be served by the changed order because the only basis that previously existed to prevent reunification had evaporated and there was evidence of harm to the child were the order not changed.
In In re Hashem H. (1996) 45 Cal. App.4th 1791, 53 Cal.Rptr.2d 294, the mother lost custody because of her psychological problems. Her section 388 petition sought to regain custody and alleged as changed circumstances that she regularly participated in psychotherapy, held a job and was ready and able to provide for the child. The trial court denied the petition without hearing because it concluded participation in therapy was not the equivalent of completion of therapy. She then amended her petition to allege that her progress in therapy led her therapist to opine her son should be returned to her custody. The court again denied the petition without hearing because there was no allegation of successful completion of therapy. The Hashem H. court concluded the prima facie showing of changed circumstances *26 had been made, and it was error to deny a hearing when there was evidence that the problems which had led to removal had been resolved. (Id. at pp. 1796-1799, 53 Cal.Rptr.2d 294.) Hashem H. is distinguishable because, unlike the present case, there was no contention either at the trial level or on appeal that the proposed change of custody from the legal guardians back to mother was not in the child's best interests.

2. Analysis

The court here declined to order a hearing because it concluded that although Mother's petition contained evidence of changed circumstances, there was no evidence or allegations that it was in Zachary's best interests to return him to Mother's custody. We find no abuse of discretion in the court's ruling. Although there was evidence of changed circumstances, the petition did not show, and there was no independent evidence from Mother's therapist or expert showing, that Mother was immediately ready to take custody of Zachary on a permanent basis. More importantly, Mother's allegations did not show, and there was no independent evidence from Mother's therapist or expert showing, that it was in Zachary's best interests to be removed from the only home and caretakers he had ever known, and thereby be deprived of the stability of a permanent home, in order to be returned to a parent who remained a risk (based on her psychological profile as well as her historical patterns) to again regress by returning to an abusive partner. On this showing, it was not an abuse of discretion to deny Mother a hearing on the section 388 petition because even if the evidence at the hearing supported the facts alleged by Mother's petition, those facts would not have supported the conclusion that Zachary's best interests would be served by the order requested by Mother.

B. The Trial Court Did Not Abuse Its Discretion By Terminating Parental Rights

Mother contends the court erred by terminating parental rights.
After reunification efforts have terminated, the focus shifts from family reunification toward promoting the best interests of the child. A child has a fundamental interest in belonging to a family unit, which includes a "placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. [Citation.]" (In re Marilyn H., supra, 5 Cal.4th at p. 306, 19 Cal.Rptr.2d 544, 851 P.2d 826.) At the selection and implementation stage, the court has three alternatives: adoption, guardianship or long-term foster care. (In re Taya C. (1991) 2 Cal.App.4th 1, 7, 2 Cal.Rptr.2d 810.) In selecting a permanent plan for an adoptable child, there is a strong preference for adoption over nonpermanent forms of placement. (San Diego County Dept. of Social Services v. Superior Court (1996) 13 Cal.4th 882, 888, 55 Cal.Rptr.2d 396, 919 P.2d 1329.) "The Legislature has decreed ... that guardianship is not in the best interests of children who cannot be returned to their parents. These children can be afforded the best possible opportunity to get on with the task of growing up by placing them in the most permanent and secure alternative that can be afforded them." (In re Beatrice M. (1994) 29 Cal.App.4th 1411, 1419, 35 Cal.Rptr.2d 162.) Unlike adoption, a guardianship is "not irrevocable and thus falls short of the secure and permanent placement intended by the Legislature." (Jones T. v. Superior Court (1989) 215 Cal.App.3d 240, 251, 264 Cal.Rptr. 4.)
Although adoption is preferred, the Legislature has recognized that in some circumstances a plan other than adoption may be appropriate and in the child's best interests. (In re Tabatha G. (1996) 45 Cal.App.4th 1159, 1165, 53 Cal.Rptr.2d 93.) A plan other than adoption can be ordered if the court determines termination of parental *27 rights would be detrimental to the child because one of four exceptions exists. (§ 366.26, subd. (c)(1).)
Mother does not contest the court's finding that Zachary was likely to be adopted if parental rights were terminated, but instead argues two exceptions were present: Zachary was living with a relative who was unwilling to adopt but was willing to provide a permanent home (§ 366.26, subd. (c)(1)(D)), and Mother had maintained a relationship with Zachary that would benefit Zachary if continued (§ 366.26, subd. (c)(1)(A)).
Once the court determines a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the four exceptions listed in section 366.26, subd. (c)(1). (In re Lorenzo C. (1997) 54 Cal. App.4th 1330, 1343-1345, 63 Cal.Rptr.2d 562.) We must affirm a trial court's rejection of these exceptions if the ruling is supported by substantial evidence. (In re Autumn H. (1994) 27 Cal.App.4th 567, 576, 32 Cal.Rptr.2d 535.)

C. The Trial Court's Rejection Of The Section 366.26, Subdivision (c)(1)(D) Exception Was Proper

Mother first argues the section 366.26, subdivision (c)(1)(D) exception should have been applied to bar termination of parental rights. Under that exception, if a child is living with a relative who is unwilling or unable to adopt because of exceptional circumstances but is nevertheless willing and capable of providing the child a permanent home, and removal of the child from the custody of the relative would be detrimental to the child's emotional wellbeing, a permanent plan other than adoption may be ordered.
Although Mother produced evidence the grandfather would prefer Mother to reunify with Zachary, Mother produced no evidence the caretaker-grandparents were unwilling or unable to adopt Zachary. Respondent's offer of proof was that the caretaker-grandparents were willing to adopt Zachary if parental rights were terminated. The trial court made a factual finding the caretaker-grandparents were willing and able to adopt Zachary, and therefore found that the section 366.26, subdivision (c)(1)(D) exception was inapplicable.
Mother notes the court denied the section 388 petition based on its conclusion Zachary's best interests were served by keeping him in the grandparents' home. Mother argues this goal creates "exceptional circumstances," permitting the court to order guardianship rather than terminating parental rights to permit adoption because the permanent plan of adoption does not preclude respondent from removing Zachary from the grandparents to permit adoption by strangers. However, the statutory "exceptional circumstance" refers to circumstances that make the custodial relative unwilling or unable to adopt, which are not present here. Mother's argument effectively asserts that if the court determines the caretaker with whom the child was placed during the reunification phase is willing to adopt and it is in the child's best interests to remain with that caretaker, the court may not terminate parental rights to permit adoption to proceed but must instead order guardianship because there is always a possibility, however remote, that the caretaker might not be approved as an adoptive home for the child. We do not read the section 366.26, subdivision (c)(1)(D) "exceptional circumstances" language to require the anomalous result that a child should not be freed for adoption if the proposed adoptive family is the caretaker family with whom he has strongly bonded.

D. The Trial Court's Rejection Of The Section 366.26, Subdivision (c)(1)(A) Exception Was Proper

Mother alternatively asserts the section 366.26, subdivision (c)(1)(A) exception was present because she regularly visited and *28 had developed a strong beneficial bond with Zachary. In In re Autumn H., supra, 27 Cal.App.4th 567, 32 Cal.Rptr.2d 535, this court articulated the approach to be used to determine when the section 366.26, subdivision (c)(1)(A) exception permits departure from the preferred plan of adoption to a plan that permits the parent/child relationship to continue. The Autumn H. court recognized that continued interaction between the biological parent and child will almost always confer some benefit on the child, and examined how a court is to accommodate the competing interests of "benefits from continued contact" with the "stability and permanence" benefits accruing from adoption. (Id. at p. 575, 32 Cal.Rptr.2d 535.) The court concluded:
"In the context of the dependency scheme prescribed by the Legislature, we interpret the `benefit from continuing the [parent/child] relationship' exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (Ibid.)
The balancing of competing considerations must be performed on a case-by-case basis and take into account many variables, including the age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs. (In re Autumn H., supra, 27 Cal.App.4th at p. 576, 32 Cal.Rptr.2d 535.) When the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption. (In re Teneka W. (1995) 37 Cal.App.4th 721, 729, 43 Cal. Rptr.2d 666.)
The evidence here showed Mother maintained regular contact and had a positive relationship with Zachary, and Mother's expert stated Zachary had a strong bond to Mother and would suffer psychological distress if he were adopted. However, the social worker observed two visits in which Mother and the grandparents were with Zachary and reported that Zachary relied on the grandparents to meet his needs, did not seek out Mother for attention or affection, and was not upset when Mother's visit ended. The social worker stated that Zachary had a relationship with Mother but it was not a parent/child relationship; instead, Zachary looked to the grandparents when he was hungry, tired or in need of affection or attention. The social worker therefore concluded it was in Zachary's best interests to provide him the security and stability of an adoptive placement.
This court in In re Casey D. (1999) 70 Cal.App.4th 38, 82 Cal.Rptr.2d 426 upheld the trial court's rejection of the section 366.26, subdivision (c)(1)(A) exception on an evidentiary showing similar to this case. There, the evidence showed the mother was loving and appropriate toward the child during her visits, and the mother's experts stated she and the child were well bonded and that the parental relationship should be maintained. However, the social worker disagreed, stating the child's relationship to the mother was not a parent/child relationship, the child viewed the foster mother as his mother, and that termination of parental rights was in the child's best interests. The Casey D. court concluded it was for the trial court to assess and weigh the evidence and could give greater weight to the social worker's testimony. The Casey D. court observed the mother's argument "essentially ask[s] us to reweigh the evidence and to substitute [our] judgment for that of the trial court." (Id. at pp. 51-53, 82 Cal.Rptr.2d 426.)
The evidence here resembles the evidence present in Casey D., and Mother's *29 argument effectively asks us to reweigh evidence. We decline to do so.

DISPOSITION
The judgment is affirmed.
BENKE, Acting P.J., and NARES, J., concur.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Dr. Jesse conducted a bonding study on May 26, 1999, and opined Mother had instinctive caregiving abilities. She observed Mother's interaction with Zachary during a single office visit and approved of their interaction. She also opined Zachary showed a psychological bond selective for Mother because of Zachary's reactions to being separated from her. During the study, Dr. Jesse and Zachary were in a room with Mother and the caretaker-grandfather, and when Mother left the room Zachary cried and ran after her and did not seek comfort from the caretaker-grandfather. Zachary did not show a similar response when the caretaker-grandfather left while Mother stayed in the room.
[3] Mother argues that California Rules of Court, rule 1432(a) requires only a statement of changed circumstances or new evidence and does not require that the petition allege facts showing the proposed change would be in the child's best interests. Although this rule would be invalid to the extent it was inconsistent with the statute (Maribel M. v. Superior Court (1998) 61 Cal.App.4th 1469, 1476, 72 Cal.Rptr.2d 536), we do not perceive the rule to be inconsistent with the statute. Subdivision (c) of rule 1432 provides the court may grant the petition after a hearing only if the petition states changed circumstances or new evidence and "it appears that the best interest of the child may be promoted by the proposed change of order...."