[Nos. A101698, A102668, A103013, A103987. First Dist., Div. Three. Mar. 30, 2005.]

In re BRITTANY K. et al., Persons Coming Under the Juvenile Court Law.
SONOMA COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v.
ELLEN J., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Factual and Procedural Background.

## Counsel

Carol Greeley, under appointment of the Court of Appeal, for Defendant and Appellant.

Steven M. Woodside, County Counsel, and Bruce D. Goldstein, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**McGUINESS, P. J.**—In these four consolidated appeals, appellant Ellen J., the maternal grandmother of minors Brittany and Amanda K. appeals from four different juvenile court orders issued after the court had already entered permanent placement plan orders finding the minors adoptable, terminating parental rights, and denying placement of the minors with appellant. In our previous opinion in this matter, filed on February 28, 2002, we affirmed the juvenile court's permanent placement plan orders in their entirety. On this appeal, appellant challenges (a) the juvenile court's denial of two successive petitions for modification under Welfare and Institutions Code section 388,[1] requesting immediate removal of the minors from the care of their foster parents (the D.'s) and placement in her own home; (b) the court's issuance, after a hearing, of a three-year restraining order barring appellant from having contact with the minors and their foster parents; and (c) its order granting the motion of respondent Sonoma County Human Services Department to terminate appellant's previously granted status as a de facto parent.[2] Based on our review of the entire record, including our previous decisions denying writ review of juvenile court orders terminating reunification services and affirming the subsequent permanency planning orders, we conclude that the juvenile court did not err or abuse its discretion, and there are no grounds for reversal. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### EX PARTE DENIAL OF SECTION 388 PETITIONS

Appellant asserts that the juvenile court committed reversible error by denying her two section 388 petitions without a hearing, contrary to governing standards requiring that such petitions be liberally construed in favor of granting a hearing to consider a requested modification. Under the facts presented on this record, appellant's assertions are meritless.

### *UNTIMELINESS OF APPEAL IN No. A102668*

We must first address the jurisdictional question of whether appellant's notice of appeal in No. A102668 was timely filed from the juvenile court's

---

[1] Unless otherwise indicated, all further unspecified statutory references are to the Welfare and Institutions Code.

[2] As of the date of issuance of the order terminating appellant's de facto parent status, Brittany was 13 and Amanda was 10 years of age.

[*] See footnote, *ante*, page 1497.

February 27, 2003, decision denying her second section 388 petition without a hearing. The notice of appeal was filed on May 12, 2003, more than 60 days after rendition of the order. Appellant contends she had an additional 10 days to file her notice of appeal, i.e., until May 13, 2003, because the commissioner was purportedly acting as a referee rather than as a temporary judge. Both parties acknowledge that the timeliness of appellant's appeal depends on whether the court commissioner who issued the denial ex parte was acting as a referee or as a temporary judge; and that the appeal was untimely unless the commissioner was sitting as a referee.

■ Under the Sonoma County Superior Court Local Rules, and without further order of the court, court commissioners act as temporary judges with respect to any and all proceedings to which they are assigned, unless otherwise expressly specified. (*In re Brittany K.* (2002) 96 Cal.App.4th 805, 811–812 [117 Cal.Rptr.2d 813].) In this case, as in *In re Brittany K.*, appellant has waived any present procedural claim that the commissioner who issued the subject order was acting as a referee rather than as a temporary judge. Nowhere in the record did appellant ever object to the commissioner acting in the latter capacity, or raise the issue of her alleged failure to stipulate to the commissioner's jurisdiction to act as a temporary judge rather than as a referee. Nor did she seek any rehearing of the commissioner's decision before a juvenile court judge. ■ "Absent timely challenge, the orders of a subordinate judicial officer sitting as a temporary judge, even without proper stipulation, become final upon expiration of the time for rehearing." (*Id.* at p. 814.) Here, as in appellant's earlier appeal, her failure either to make any objection to the commissioner sitting as a temporary judge or to draw attention to her alleged refusal to so stipulate, together with the fact she did not seek a rehearing before a juvenile court judge, has rendered the disputed ex parte order final. Therefore, appellant's purported appeal in No. A102668 from the order denying her second section 388 petition was untimely filed, and must be dismissed. (*Brittany K., supra,* 96 Cal.App.4th at p. 814.)

### *Appeal in Appeal No. A101698*

■ Section 388, subdivision (a) provides in pertinent part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and . . . shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstances or new evidence which are alleged to require the change of order or termination of jurisdiction." Under

California Rules of Court, rule 1432,[15] a petition for modification under section 388 "must be liberally construed in favor of its sufficiency." (Rule 1432(a).) On the other hand, "If the petition fails to state a change of circumstance or new evidence that might require a change of order or termination of jurisdiction, the court may deny the application ex parte." (Rule 1432(b).) Moreover, a petition may not be granted unless "it appears that the best interest of the child may be promoted by the proposed change of order or termination of jurisdiction," *and* all the parties have stipulated to the requested modification or the court has held an evidentiary hearing at which the petitioner has the burden of proving "that the child's welfare requires such a modification." (Rule 1432(c), (d), (f).) Significantly, if the requested modification is for the removal of a child from the child's current home, the petitioner must make this showing by the higher standard of clear and convincing evidence. (§ 361, subd. (c); rule 1432(f).)[16]

■ Thus, in order to obtain a hearing on her section 388 modification petition, appellant was required to make a prima facie showing of changed circumstances or new evidence "that might require" the removal of the minors from their foster parents' home and their transfer to appellant's own custody and care in order to promote and protect the best interests and welfare of the minors. (Cal. Rules of Court, rule 1432(b), (c); *In re Marilyn H.* (1993) 5

---

[15] Unless otherwise indicated, all further references to rules are to the California Rules of Court.

[16] Rule 1432(f) states in pertinent part: "The petitioner requesting the modification under section 388 has the burden of proof. If the request is for the removal of the child from the child's home, the petitioner must show *by clear and convincing evidence* that the grounds for removal in section 361[, subdivision] (c) exist." (Italics added.)

Section 361, subdivision (c) in turn provides in pertinent part: "A dependent child may not be taken from the physical custody of his or her parents *or guardian or guardians with whom the child resides at the time the petition was initiated*, unless the juvenile court finds *clear and convincing evidence* of any of the following:

"(1) There is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor . . . , and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody. [¶] . . . [¶]

"(3) The minor is suffering severe emotional damage, as indicated by extreme anxiety, depression, withdrawal, or untoward aggressive behavior toward himself or herself or others, and there are no reasonable means by which the minor's emotional health may be protected without removing the minor from the physical custody of his or her parent or guardian.

"(4) The minor or a sibling of the minor has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent, guardian, or member of his or her household, or other person known to his or her parent, and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent or guardian, or the minor does not wish to return to his or her parent or guardian.

"(5) The minor has been left without any provision for his or her support, or a parent who has been incarcerated or institutionalized cannot arrange for the care of the minor . . . ." (Italics added.)

Cal.4th 295, 309–310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 [92 Cal.Rptr.2d 20]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 [50 Cal.Rptr.2d 745] ["A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited"].)

■ The juvenile court's determination to deny a section 388 petition without a hearing is reviewed for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316–319 [27 Cal.Rptr.2d 595, 867 P.2d 706]; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 [104 Cal.Rptr.2d 422]; *In re Zachary G., supra,* 77 Cal.App.4th at pp. 805–806, 808.) We must uphold the juvenile court's denial of appellant's section 388 petition unless we can determine from the record that its decisions " 'exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M., supra,* 7 Cal.4th at pp. 318–319; see *In re Zachary G., supra,* 77 Cal.App.4th at p. 808.)

■ Moreover, in reviewing the juvenile court's determination, we bear in mind the fact that, "[i]n any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity. [Citation.] 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' [Citations.] [¶] . . . [¶] After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.)

In order to obtain a hearing on her section 388 petition, appellant had to allege a "change of circumstance or new evidence that requires changing the [juvenile court's] order." (Rule 1432(a)(6); see *In re Edward H., supra,* 43 Cal.App.4th at p. 592.) In our previous opinion in this matter, filed February

28, 2002, this court specifically upheld the juvenile court's failure to place the minors in appellant's care, based on our determination from the entire record that appellant "would not be an appropriate placement for the minors" because she "would pose a continuing risk of further emotional, psychological and possibly physical harm" to them. Thus, with regard to her more recent section 388 petitions, appellant was required, *at a minimum*, to make a prima facie showing that *she* had made sufficient improvements in her own personal circumstances, attitudes and outlook such that she *herself* could now be considered an appropriate placement for the minors. (*In re Anthony W., supra,* 87 Cal.App.4th at pp. 250–251; *In re Edward H., supra,* 43 Cal.App.4th at pp. 592–594.)

This appellant has failed to do. Virtually the entire focus of appellant's section 388 petition—which requested modification of the juvenile court's prior orders to remove the minors from the foster parents' care and place them with appellant as a new adoptive placement—was on the alleged unsuitability of the minors' foster placement with the D.'s, or respondent's alleged failure to give appellant or the biological mother access to the minors. Appellant's unsubstantiated allegations about the unfitness of the D.'s as foster parents for the minors were refuted by the recent social worker and court-appointed special advocate (CASA) reports submitted by respondent in opposition to the petition, and in connection with the intervening permanency review hearing, all showing that the minors had made dramatic progress under the foster parents' care. In contrast, appellant failed to make *any* showing that her own personal circumstances had changed to such an extent that she herself could now be considered an appropriate placement for the minors.[17] In actuality, by so clearly demonstrating the lengths to which

---

[17] Thus, appellant alleged as changed circumstances that the foster parents had declined to adopt the minors because of their bond with the biological mother; respondent had restricted posttermination visitation by the biological mother; respondent had refused to schedule visitation for appellant; the social workers had failed to tell the juvenile court that Mr. D. allegedly had "a recent criminal conviction and had been married six times"; and the CASA and the social worker had made reports indicating that the minors were having difficulty bonding with the foster parents. The only allegedly "changed circumstances" related to appellant herself were that appellant had been found to be qualified as a foster parent by Yolo County, and evaluated "by two psychologists" to be "psychologically appropriate to care" for the minors; and appellant still had "a strong bond" with the minors, despite her lack of any recent contact.

Aside from the statement in her declaration, there was nothing in the record before the juvenile court on appellant's first section 388 petition to substantiate appellant's assertions about her qualification as a foster parent in Yolo County or her evaluation by "two psychologists." These evaluations did not become part of the record until they were submitted by appellant in connection with her opposition to respondent's motion to terminate her de facto parent status. The evaluations were conducted in 2000, and were therefore not "new evidence." Moreover, they were contradicted by subsequent peer review, which came to the conclusion that appellant's demonstrated personality patterns presented grounds for serious concern about her ability to function effectively as a custodial parent.

appellant would go to destabilize the minors' foster placement, and simultaneously revealing her own lack of genuine empathy for the reality of the minors' circumstances, appellant's petition actually demonstrated that her own circumstances had not changed at all, and that she continued not to be fit for consideration as a permanent placement for the minors.

Even if we were to conclude that appellant's section 388 petition made a prima facie showing of changed circumstances—which we do not—the juvenile court properly denied the petition because there was no showing that it was in the minors' best interests for the court to return them to appellant's custody. (*In re Anthony W., supra,* 87 Cal.App.4th 'at pp. 251–252; *In re Zachary G., supra,* 77 Cal.App.4th at p. 808; *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 323 [60 Cal.Rptr.2d 557].) There was no independent evidence whatsoever that appellant had overcome the deficiencies that had made her a continuing risk of emotional, psychological and possibly physical harm to the minors, and was now ready to take them on a permanent basis. Neither was there any independent evidence that it was in the minors' best interests to be taken from the foster home where they were making substantial progress and from the foster parents with whom they were in the process of bonding, and thereby deprive them of the stability and permanence of their existing home. At this point in these dependency proceedings, the overwhelming consideration of both the juvenile court and of this court must be the minors' need for stability, continuity, and permanency. (*In re Stephanie M., supra,* 7 Cal.4th at pp. 317–318, 323–324; *In re Marilyn H., supra,* 5 Cal.4th at p. 309; *In re Edward H., supra,* 43 Cal.App.4th at pp. 593–594.) Nothing in appellant's section 388 petition rebuts the presumption that continued foster care was in the best interests of the minors.

In sum, the record shows that appellant failed to meet her burden of making a prima facie showing of changed circumstances, or that the re-quested modification would promote the minors' best interests. (*In re Zachary G., supra,* 77 Cal.App.4th at pp. 805–807; *In re Edward H., supra,* 43 Cal.App.4th at pp. 592–594.) We conclude there was no abuse of discretion by the juvenile court in its denial of appellant's section 388 petition on appeal in No. A101698.

### IMPOSITION OF RESTRAINING ORDER

Appellant contends that we must reverse the juvenile court's imposition of a restraining order against her because (a) it was in violation of her constitutional right to due process, and (b) it was unsupported by the evidence. Neither contention has any merit.

## SECTION 213.5 NOT UNCONSTITUTIONAL

Appellant asserts that the restraining order must be reversed because section 213.5, subdivision (a), pursuant to which it was issued, is "vague and overbroad," and in violation of substantive due process, because it unreasonably and arbitrarily restricts her fundamental rights without providing any clear or narrowly drawn definition of the term "stalking." There is no merit to appellant's constitutional claims.

■ Appellant defines the "fundamental rights" threatened by issuance of the restraining order pursuant to section 213.5 as her "fundamental right to maintain a relationship with her grandchildren, her right to participate in the dependency proceeding in order [to] ensure that her grandchildren are safe and are provided a suitable permanent home, her right to travel freely, her right to speak freely, etc." Contrary to her apparent assumption, appellant—a noncustodial grandparent of dependents of the juvenile court—has no substantive due process right to free association with the minors, or to maintain a relationship with them. The rights of grandparents to assert control over their grandchildren are restricted by state juvenile jurisdiction to determine and protect the best interests of dependent minors. (See *Troxel v. Granville* (2000) 530 U.S. 57, 60, 64–66, 69–73 [147 L.Ed.2d 49, 120 S.Ct. 2054] [grandparents have no constitutional right to visitation over the objections of fit, custodial parents]; *Miller v. California* (9th Cir. 2004) 355 F.3d 1172, 1175–1176 [despite their de facto parent status under California law, noncustodial grandparents of children who are dependents of the juvenile court have no substantive due process constitutional right to family integrity and freedom of association with their grandchildren]; *Mullins v. Oregon* (9th Cir. 1995) 57 F.3d 789, 791, 793–797 [grandparents do not have any constitutionally protected substantive due process or other liberty interest in the adoption of their children's offspring].) Appellant has not cited any California authority for her asserted substantive due process right to maintain a relationship with her dependent grandchildren. We conclude that no such constitutional right exists.

We turn to appellant's contention that section 213.5 is unconstitutionally vague or uncertain. At issue is the following statutory provision: "After a petition has been filed pursuant to Section 311 to declare a child a dependent child of the juvenile court, and until the time that the petition is dismissed or dependency is terminated, upon application. . . the juvenile court may issue ex parte orders (1) enjoining any person from molesting, attacking, striking, sexually assaulting, *stalking*, or battering the child or any other child in the household; (2) excluding any person from the dwelling of the person who has

care, custody, and control of the child; and (3) enjoining any person from behavior, including contacting, threatening, or disturbing the peace of the child, that the court determines is necessary to effectuate orders under paragraph (1) or (2). A court issuing an ex parte order pursuant to this subdivision may simultaneously issue an ex parte order enjoining any person from contacting, threatening, molesting, attacking, striking, sexually assaulting, *stalking*, battering, or disturbing the peace of any parent, legal guardian, or current caretaker of the child, regardless of whether the child resides with that parent, legal guardian, or current caretaker . . . ." (§ 213.5, subd. (a), italics added.) Appellant contends the statute is unconstitutionally vague, "unreasonable and arbitrary," because "it provides no guidelines whatsoever for deciding what 'stalking' means." The issue appears to be one of first impression.

Appellant's constitutional challenge to section 213.5 must overcome the strong presumption favoring a law's validity. "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21].) " ' "A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507].) "[A] claim that a law is unconstitutionally vague can succeed *only* where the litigant demonstrates, not that it affects a substantial number of others, but that the law is vague as to her or 'impermissibly vague in *all of its applications.*' [Citations.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 [60 Cal.Rptr.2d 277, 929 P.2d 596].) In sum, " ' "[r]easonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language." [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources,' including 'reference to other [statutes or] code provisions' [citations]. Other 'definable sources' also include judicial decisions and common law [citations], legislative history, and other portions of the legislation. [Citations.] Finally, and sometimes most importantly, common sense is also to be considered. [Citations.]" (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 139 [122 Cal.Rptr.2d 425].)

In accordance with these principles, section 213.5, subdivision (a) must not be found unconstitutionally vague unless no reasonable and practical construction of the statutory term "stalking" can be found by reference to other statutory, legislative and judicial sources, as well as common usage. In

common English, to "stalk" is defined as "to pursue quarry or prey stealthily or under cover," or more generally as "to pursue or follow in a stealthy, furtive, or persistent matter." (Webster's 3d Internat. Dict. (1970) p. 2221.) Certainly, this ordinary dictionary definition of the word is neither arcane nor obviously unrelated to the term as utilized in the statute itself, where it is linked to a variety of offensive behaviors including, among other things, "molesting," "contacting, threatening, or disturbing the peace." (§ 213.5, subd. (a).) To consider just one of these terms, "molesting" has been defined for purposes of section 213.5 as synonymous with " ' "trouble, disturb, annoy or vex," ' " or " ' " 'to interfere with or meddle with unwarrantably so as to injure or disturb.' " ' " (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 212 [22 Cal.Rptr.3d 686], citing *People v. Lopez* (1998) 19 Cal.4th 282, 289–290 [79 Cal.Rptr.2d 195, 965 P.2d 713].) So defined, the terms "stalking" and "molesting" may be understood as very close in meaning, with the former referring to a more ongoing and persistent form of molestation, carried out in the manner of a furtive or undercover pursuit.

The ordinary dictionary definition of the term is, moreover, close to that utilized in other statutes, to which we may refer for purposes of obtaining a "reasonable and practical" statutory construction of the term as used in section 213.5. (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors, supra,* 100 Cal.App.4th at p. 139.) Thus, "the tort of stalking" is defined in Civil Code section 1708.7 as "a pattern of conduct the intent of which was to follow, alarm, or harass the plaintiff," as a result of which "the plaintiff reasonably feared for his or her safety, or the safety of an immediate family member," including any person who regularly resided in the plaintiff's household within the preceding six months (Civ. Code, § 1708.7, subd. (a)); while "harass" is defined as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, torments, or terrorizes the person, and which serves no legitimate purpose." (*Id.,* subd. (b)(4).) A "pattern of conduct" in turn is defined as "conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (*Id.,* subd. (b)(1).) Criminal "stalking" is similarly identified in Penal Code section 646.9 with following or harassing another person (§ 646.9, subd. (a)); and harassment and "course of conduct" are defined for criminal purposes in terms virtually identical to the parallel definitions given in the civil statute (§ 646.9, subds. (e), (f)).[18]

---

[18] Penal Code section 646.9 provides in pertinent part: "(a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . . [¶] . . . [¶] (e) For the purposes of this section, 'harasses' means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose. [¶] (f) For the purposes of this

In utilizing these statutory provisions to aid in construing the statutory term "stalking" for purposes of section 213.5, it is not necessary for us to incorporate every aspect of the statutory definitions of that word as used in Civil Code section 1708.7 or Penal Code section 646.9 for the purpose of describing, respectively, the crime and the tort of "stalking." Rather, we may simply utilize these sources as references to aid us in determining if the term as used in section 213.5 is susceptible to a reasonable and practical construction, such that a person of ordinary intelligence would have notice of the conduct to be enjoined by a restraining order issued under *that* statute. If so, that is sufficient to uphold the constitutionality of section 213.5. (*Williams v. Garcetti, supra,* 5 Cal.4th at p. 568; *Personal Watercraft Coalition v. Marin County Bd. of Supervisors, supra,* 100 Cal.App.4th at p. 139.)

■ On the basis of the definitions of the word used in the Penal and Civil Codes, the ordinary dictionary definitions of the term in common usage, and the clarifying language found in section 213.5 itself, we conclude that the term "stalking," as utilized in section 213.5, does not refer exclusively to the act of literally following someone, although it certainly includes that conduct. Instead, it refers broadly to conduct that is designed to "follow" a particular person in a more general sense, as in to pursue, monitor, watch or keep that person under surveillance for no legitimate purpose, and with the consequent effect of seriously harassing, alarming, annoying, tormenting, or terrorizing the person being followed, pursued, monitored, watched or kept under surveillance. (Cf. *People v. Lopez, supra,* 19 Cal.4th at pp. 289–290; *In re Cassandra B., supra,* 125 Cal.App.4th at p. 212.)

■ Appellant cannot overcome the strong presumption favoring the validity and constitutionality of the statute. Simply put, a reasonable person would necessarily be on notice that if she surreptitiously conceals herself for the purpose of making unauthorized contact with specific children, hires investigators to spy on them, videotapes their home, tracks their movements, and goes to their schools unannounced to see them and spread defamatory information about their caretakers, all resulting in emotional distress to the children and their caretakers, she would be engaged in "stalking," and subject to a restraining order under section 213.5. (*Williams v. Garcetti, supra,* 5

---

section, 'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.' [¶] (g) For the purposes of this section, 'credible threat' means a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the defendant had the intent to actually carry out the threat."

Cal.4th at p. 568; · *Personal Watercraft Coalition v. Marin County Bd. of Supervisors, supra,* 100 Cal.App.4th at p. 139.) Because a reasonable and practical construction can be given to the term "stalking" as used in section 213.5, derived from applicable statutory references and common usage, we hold that section 213.5, subdivision (a) is not unconstitutionally vague.

### Restraining Order Supported by Substantial Evidence

Appellant further contends that there was insufficient evidence to support the allegation that she engaged in "stalking," as used in section 213.5, and that the restraining order must be reversed on this basis. Appellant is wrong.

Appellant's uncontested behavior toward the minors and the foster parents in this case easily comes within a reasonable and practical construction of either of the statutory terms "molesting" or "stalking." Thus, the record shows appellant concealed herself at a scheduled visitation between the minors and their birth mother so as to obtain unauthorized access to them; surreptitiously searched out and located the confidential location of the foster residence, in violation of their intended privacy; hired a private detective to spy on the minors' comings and goings at their foster home; and showed up unannounced at each of the minors' schools, where she proceeded to make defamatory accusations about the foster parents to school authorities and attempted to make unauthorized contact with the minors. Particularly when considered in the larger context of appellant's relentless and unceasing attempts to remove the minors' from their caregivers' home, all this conduct was at the very least troubling, disturbing, vexing, and unwarrantably meddlesome to the minors and their foster parents, and unquestionably interfered with their attempts to stabilize and nurture their relationship with the goal of permanency and adoption. (*In re Cassandra B., supra,* 125 Cal.App.4th at pp. 212–213.)

We conclude that appellant's conduct constituted a knowing and willful course of conduct specifically directed at the minors and the D.'s, which seriously alarmed, annoyed, tormented, and even terrorized them, and which served no legitimate purpose. As such, there was sufficient evidence to support a conclusion that appellant had been "stalking" the minors and the foster parents. There was no abuse of discretion by the juvenile court in imposing a restraining order pursuant to section 213.5.

### Termination of De Facto Parent Status

Appellant's final contention, and the subject of her appeal in No. A103987, is that the juvenile court's decision terminating her de facto parent status was an abuse of discretion. The contention is meritless.

A "de facto parent" is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Rule 1401(a)(8); *In re Patricia L.* (1992) 9 Cal.App.4th 61, 66 [11 Cal.Rptr.2d 631].) The juvenile court may grant de facto parents "standing to participate as parties in disposition hearings and any hearing thereafter at which the status of the dependent child is at issue. The de facto parent may: [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; [¶] (3) Present evidence." (Rule 1412(e); *In re Patricia L., supra,* 9 Cal.App.4th at p. 66.)[19]

"Whether a person falls within the definition of a 'de facto parent' depends strongly on the particular individual seeking such status and the unique circumstances of the case. However, the courts have identified several factors relevant to the decision. Those considerations include whether (1) the child is 'psychologically bonded' to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique from the other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact with the adult. [Citations.]" (*In re Patricia L., supra,* 9 Cal.App.4th at pp. 66–67, fn. omitted.) Once granted, de facto parent status continues until terminated by the juvenile court or the dependency itself is terminated. If it believes de facto parent status should be terminated, the responsible social services agency or department must file a noticed motion, and "has the burden of establishing a change of circumstances which no longer support the status, such as when a psychological bond no longer exists between the adult and the child," or when the de facto parent no longer has

---

[19] The rights of de facto parents with respect to juvenile dependency proceedings are thus greater than those accorded to relatives of dependent children. Although relatives may, "[u]pon a sufficient showing to the court," be permitted to be present at hearings and to address the court (rule 1412(f)), de facto parents have these rights by virtue of their status without the need for any additional showing. In addition, as a party, the de facto parent has the right to be represented by counsel and, most significantly, has the right to present evidence at hearings. (Rule 1412(e).)

"From these rules we discern the importance of de facto parent status: the status provides a nonbiological parent who has achieved a close and continuing relationship with a child the right to appear *as a party*, to be represented by counsel, and present evidence at dispositional hearings. Absent such status, very important persons in the minor's life would have no vehicle for 'assert[ing] and protect[ing] their own interest in the companionship, care, custody and management of the child' [citation] and the court would be deprived of critical information relating to the child's best interests. [Citations.]" (*In re Patricia L., supra,* 9 Cal.App.4th at p. 66.)

reliable or unique information regarding the child that would be useful to the juvenile court. (*Id.* at p. 67.)

The juvenile court originally granted appellant the status of de facto parent on June 7, 2000. At the hearing on its motion to terminate appellant's de facto parent status, respondent clearly bore its burden of establishing by a preponderance of the evidence that as a result of changed circumstances, the considerations supporting appellant's de facto parent status no longer exist. Respondent presented substantial evidence showing that appellant no longer serves as a psychological parent to the minors. Respondent's witnesses testified that the D.'s had become the minors' psychological parents, appellant no longer played this role, and it would be disastrous or traumatic for the minors to be removed from their foster placement. Significantly, a witness called by appellant herself—the licensed clinical social worker who performed appellant's adoption homestudy and authored the report denying her home as a suitable placement for the minors—also testified to the same effect. By the same token, there was *no evidence* offered showing that appellant herself filled the role of psychological parent to the minors. To the contrary, the evidence that was adduced on this subject showed that the minors rarely if ever mentioned appellant, or requested to see her.

Substantial evidence was similarly admitted showing that appellant does not possess any unique information regarding the minors that would assist the juvenile court in assessing their best interests. Appellant had not provided regular care to the minors for approximately three years, and had not even seen them—except for one surreptitious and unauthorized visit—for a year. Visitation had been suspended because of appellant's inappropriate comments to the minors and her frequent nonobservance of respondent's rules, and the concern of respondent and the juvenile court that she posed a substantial risk to the minors' emotional health and the stability of their placement. Moreover, respondent also introduced evidence from the minors' therapists showing that appellant's understanding of the minors' emotional needs was seriously deficient, and she appeared unable to recognize or acknowledge the duration or the severity of physical abuse and neglect previously suffered by the minors. It was reasonable for the juvenile court to conclude, as did the minors' therapists, that appellant's tendency to minimize the extent and impact of the abuse and neglect previously suffered by the minors restricted her ability to understand their emotional needs, and compromised the reliability or usefulness of any assistance she might be able to give the juvenile court in assessing their best interests.

De facto parent status is also granted, in part, to permit an adult to protect his or her potential custody interests in a dependent child where a future proceeding may result in an order permanently foreclosing any future

contact between the child and the adult. (*In re B. G.* (1974) 11 Cal.3d 679, 692–693 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Patricia L., supra,* 9 Cal.App.4th at pp. 66–67.) Both before and after the parental rights of the minors' biological parents were terminated, appellant attempted to gain adoptive placement of the minors. The state adoptions office performed a homestudy and denied appellant's application to adopt the minors—which denial was subsequently upheld on administrative review—based on her inability to recognize the minors' needs, her own past history as an abusive parent, her strong support for corporal punishment, and her demonstrated inability to put the minors' needs ahead of her own. The juvenile court refused to grant appellant's request for custodial placement of the minors, and we upheld that refusal in our previous decision in this matter, based in part on the evidence showing that appellant would be an inappropriate placement for them.

Nothing has happened since our last opinion in this case to change the conclusion to which we came at that time. To the contrary, appellant's conduct since the January 25, 2001, section 366.26 hearing terminating the parental rights of the minors' biological mother has simply provided even stronger evidence of appellant's unfitness to serve as their custodial parent. Despite the unanimous reports showing that the minors have done well in foster care, and their manifest need for stability and permanence, appellant has obstinately refused to acknowledge any progress they have made. Rather than attempting in any positive way to support the minors in their growth, she instead has relentlessly tried to undermine and discredit the foster parents and destabilize the minors' placement with them. Her ongoing efforts—including but not limited to surreptitiously concealing herself in an attempt to gain unauthorized access to the minors, hiring a private investigator to spy on and videotape the minors and their foster parents at their confidential residential address, seeking out negative information about the D.'s from neighbors and a former spouse, showing up unannounced at both of the minors' schools, and disseminating inflammatory material about the D.'s to school authorities and others—have predictably and understandably caused substantial emotional distress to the minors and their foster parents, and placed their foster placement and potential adoption in serious jeopardy.

In short, appellant has by her own actions forfeited any custody interest she might have had in the minors, and convincingly demonstrated that she no longer meets the requirements for de facto parent status. The juvenile court clearly did not abuse its discretion in making the determination to terminate that status.

### DISPOSITION

The appeal in No. A102668 is dismissed as untimely. In all other respects, the orders, decisions and determinations of the juvenile court from which appellant appeals are affirmed in their entirety.

Parrilli, J., and Pollak, J., concurred.

A petition for a rehearing was denied April 26, 2005, and appellant's petition for review by the Supreme Court was denied June 8, 2005.