Filed 4/28/14  In re Frank M. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re FRANK M. III et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FRANK M., JR., <br><br> Defendant and Appellant. | F068265 <br><br> (Super. Ct. Nos. 127685 & 127686) <br><br><br> **OPINION** |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Kern County.  William D. Palmer, Judge.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Theresa A. Goldner, County Counsel, and Kelley D. Scott, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Poochigian, Acting P.J., Detjen, J. and Franson, J.

Frank M., Jr. appeals from an order terminating his parental rights under Welfare and Institutions Code section 366.26[1] as to his two sons, now five and six years of age. Frank contends the juvenile court erred in declining to apply the exception to adoption contained in section 366.26, subdivision (c)(1)(B)(i), hereafter referred to as the "beneficial relationship" exception. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In October 2011, the Kern County Department of Human Services (department) removed Frank's two sons, then three and four, from his custody after substantiating a report Frank was using methamphetamine and neglecting the children. The children were in Frank's custody because their mother, Patricia, was a drug abuser. The department placed the children together in foster care.

In February 2012, the juvenile court adjudged the children its dependents and ordered Frank to participate in child neglect, parenting and substance abuse counseling and submit to random drug testing. The court also ordered two hours of weekly, supervised visits for Frank. The court denied Patricia reunification services.

Frank received 12 months of reunification services but did not make any progress toward reunifying with his sons. He did not complete substance abuse counseling, regularly tested positive for marijuana and missed numerous visits with the children.

In February 2013, at a contested 12-month review hearing, the juvenile court terminated Frank's reunification services, reduced visitation to every other week for one hour and set a section 366.26 hearing. The court also found that Patricia's whereabouts were unknown.

In its report for the section 366.26 hearing, the department recommended the juvenile court terminate Frank's and Patricia's parental rights and select adoption as the

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

permanent plan for the children. The children recognized Frank as their father and looked forward to visiting him but did not cry when the visits were over. They did, however, express a desire to live with their prospective adoptive family "'forever.'" The department opined that even though there was a relationship between Frank and his sons, the benefit of freeing them for adoption outweighed any negative consequences termination of Frank's parental rights would have on them.

The juvenile court conducted the section 366.26 hearing in October 2013. Frank testified the children lived with him full-time from birth to their detention and described their relationship as "[l]oving." He did all the things a parent would do, bathed and fed them, read stories to them and took them to the park. He testified he completed a parenting class during the reunification period and afterward, in August 2013, completed an outpatient drug treatment program. Four days later, he violated probation and was incarcerated for 45 days.

Frank further testified the children visited him once while he was in custody. He believed the visit went well. The children ran to him and hugged him as soon as he entered the visitation area. At the end of the visit, the youngest child cried and said "I want to come home, daddy." As they left, the children kept looking back and saying "I love you[,] daddy." Frank said it broke his heart. Frank and the children visited again in September after his release. They ran to him and were "all over" him. They played catch together and hugged and kissed. The children asked Frank when they were coming home.

Frank testified he was living with his wife of two years and their 10-month-old son. The children were loving and caring toward their little brother. Frank said he was a better person and he believed it would be detrimental to the children to terminate his parental rights because they were "so close" to him.

Social worker Sarah Warner testified she observed a visit Frank had with the children in October 2013. The children were very affectionate toward Frank and at the

3.

end of the visit hugged and kissed him.  When they saw their adoptive mother, they ran to her and said, "mommy, mommy."

Warner further testified the children interacted with their adoptive mother in a very positive way and had a very good relationship with her children and husband.

Lisa T., the prospective adoptive mother, testified she was committed to adopting the children.  She said the children appeared happy to see Frank when he was not incarcerated but did not cry at the end of their visits with him.  They just wanted to know what they were going to do next.

At the conclusion of the hearing, the juvenile court found by clear and convincing evidence that the children were likely to be adopted.  It further found that the beneficial relationship exception was not applicable and terminated Frank's and Patricia's parental rights.  This appeal ensued.

## DISCUSSION

Frank contends the juvenile court erred in failing to apply the beneficial relationship exception to termination of his parental rights.  We disagree.

Once a dependency case reaches the permanency planning stage, the statutory presumption is that termination is in an adoptable child's best interests and, therefore, not detrimental.  (§ 366.26, subd. (b); *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343–1344.)  It is the parent's burden to show that termination would be detrimental under one of the statutory exceptions.  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.)  The beneficial relationship exception in section 366.26, subdivision (c)(1)(B)(i), involves a two-part test:  did the parent maintain regular visitation and contact with the child, and would the child benefit from continuing the relationship.

The Court of Appeal, Fourth Appellate District, Division One interpreted the beneficial relationship exception in *In re Autumn H.* (1994) 27 Cal.App.4th 567 to mean "the [parent/child] relationship [that] promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with

4.

new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Id.* at p. 575.)

When a juvenile court rejects a detriment claim and terminates parental rights, the appellate issue is whether the juvenile court abused its discretion in so doing. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) The decision is not reviewed, as Frank argues, for substantial evidence that termination would be detrimental.

To conclude there was an abuse of discretion, the proof offered must be uncontradicted and unimpeached so that discretion could only be exercised in one way, compelling a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) Based on our review of the record, we conclude the juvenile court properly exercised its discretion in rejecting Frank's argument.

In this case, Frank failed to show he satisfied the first of the two-part test; that he maintained regular visitation with the children. According to the record, he missed over half of the visits (37 out of 71) from the time the children were detained until May 2013. Frank concedes but contends he subsequently maintained regular visitation, pointing to evidence he missed only three of 10 visits. The juvenile court, however, found Frank failed overall to maintain regular visitation and we concur.

Further, the juvenile court found no evidence that terminating Frank's parental rights would be detrimental to the children. Though Frank and the children had a loving and affectionate relationship, they separated from him easily and willingly went with their adoptive mother, to whom they were attached. Having concluded the children would not be harmed by terminating Frank's parental rights, the juvenile court properly

found the benefits of adoption outweighed the benefit to the children from continuing their relationship with him.

We find no abuse of discretion in the juvenile court's failure to find the beneficial relationship exception applicable in this case and affirm its order terminating Frank's parental rights.

## DISPOSITION

The order terminating Frank's parental rights is affirmed.