Filed 11/17/14  In re R.F. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.F. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.F. et al.,<br>    Defendants.<br><br>F.C. et al.,<br><br>    Appellants. | E059848<br><br>(Super.Ct.Nos. J248463 & J248464)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Appellant F.C.

Lauren K. Johnson, under appointment by the Court of Appeal, for Appellant C.F.

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

Appellants F.C. (the paternal grandmother) and C.F. (the paternal aunt or aunt) filed separate appeals from the juvenile court's summary denial of their Welfare and Institutions Code[1] section 388 petitions regarding R. and C. (the children). They also join in each other's arguments to the extent they are relevant. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited, no extensive description of the dependency proceedings is needed.[2]

On March 15, 2013, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition alleging that R., who was eight months old at the time, came within subdivisions (a) (serious physical harm), (b) (failure to protect) and (e) (severe physical abuse). The petition was later amended to add an allegation under section 300, subdivision (j) (abuse of sibling). The amended petition alleged that, while in the care and custody of his father, R. sustained a second degree burn on his right thigh. The amended petition alleged that mother knew or should have known that the safety of R. was at risk while in father's care. The petition also alleged that both mother and father

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] On the court's own motion, we incorporated the record in the instant case, case No. E059848, and the record of case No. E060241.

2

(the parents) had domestic violence histories, substance abuse problems, criminal histories, and extensive CFS histories. The amended petition further alleged that R.'s sibling, C., sustained a fracture to his right fibula, while in the parents' care. CFS also filed a section 300 petition on behalf of C., who was two years old at the time. That petition alleged that C. came within subdivisions (b) (failure to protect) and (j) (abuse of sibling). That petition was subsequently amended to add allegations under section 300, subdivisions (a) (serious physical harm) and (e) (severe physical abuse), with regard to a fracture to C.'s right fibula.

The social worker filed a detention report, which stated that R. came to CFS's attention when he was transported to the hospital for an injury due to boiling water being dropped on him. He sustained a second degree burn that was three to four inches long and approximately one inch wide, on his upper thigh. R. was at the hospital with the maternal grandmother, and the whereabouts of the parents were unknown. The nurse contacted the police. R. was discharged to the maternal grandmother. The parents subsequently arrived at the hospital. Father told the police that he was making Top Ramen soup and C. bumped into him. Consequently, he dropped the soup, and it splashed on R.

The social worker went to the Days Inn, where the parents were staying with the maternal grandmother and her boyfriend. The parents had been staying there for one week and said they were only "visiting" the maternal grandmother. They planned to stay for two more weeks. The social worker noticed that C. was sleeping on top of some

blankets on the ground, that the room was cluttered, and that there were minimal provisions for the children. The parents said that R. slept in the bed with the maternal grandmother and her boyfriend. The social worker informed the parents about her concerns with the residence, and the parents agreed to rectify the problems.

The social worker conducted research on the family and discovered that the parents had a history with CFS and both parents had criminal histories. Moreover, Dr. Mark Massi had concerns regarding R. and recommended that he be taken to Loma Linda University Medical Center (Loma Linda). The social worker went back to the Days Inn to get the children. The maternal grandmother's boyfriend said the parents were gone and left no information about where they were going or when they would return. C. was examined at Loma Linda, as well as R., and it was discovered that C. had an injury to his right fibula consistent with a fracture. The social worker placed the children in protective custody.

The parents failed to appear at the detention hearing held on March 18, 2013. The court detained the children in foster care.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report and recommended that no reunification services be provided to the parents, pursuant to section 361.5. The social worker interviewed mother, who said that R.'s injury occurred when she was out grocery shopping with the maternal grandmother. Regarding C.'s leg injury, mother initially

4

expressed shock, but then said he fell six months ago when his leg got "tangled in a stool"; however, she did not notice any injury to him from that incident.

The social worker interviewed father, who changed his story about how R. was injured. Father said what actually happened was that he was running around and cleaning the room. He placed both children on the bed. He placed a cup of water in the microwave, and when he pulled the cup out of the microwave, R. pushed C. off the bed, then lost his balance. Father reached out to catch R. as he was falling off the bed. Father had the cup of hot water in the other hand, and it spilled on R.

Father further reported that he received therapeutic services for approximately two years as a child, and that the services were "court mandated" due to "his mother not being a great parent." He stated that his mother (the paternal grandmother) abused alcohol, and that his sister abused marijuana. Furthermore, he reported that the paternal grandmother suffered from depression, and that she used to beat him as a form of discipline. Nonetheless, father requested that the paternal grandmother be assessed for placement of the children.

A contested jurisdiction/disposition hearing was held on June 20, 2013. The court found that the parents had no plausible explanation for the children's injuries. The court found that both children came within the provisions of section 300, subdivisions (a), (b), (e), and (j). The court found father to be the children's presumed father, declared them dependents of the court, and removed them from the parents' custody. The court ordered that reunification services not be provided to the parents. The court also ordered that the

children be maintained in their current foster home. The court set a section 366.26 hearing.

*Section 366.26*

The social worker filed a section 366.26 report on October 8, 2013, and recommended that parental rights be terminated and adoption be implemented as the permanent plan. The children had been living with the same care providers since March 13, 2013. There was a mutual attachment between the current caregivers and the children. The caregivers loved the children and were anxious to adopt them. The social worker had observed them in the home and opined that the children were secure and well-adjusted.

The social worker further reported that she submitted a relative placement request on behalf of the paternal grandmother. The relative approval worker informed the social worker that a criminal exemption would be required for both the paternal grandmother and the paternal aunt, who resided in the home. The relative approval worker reported that the paternal grandmother had an extensive child welfare history, which included over 20 referrals from 1994 to 2009. She also had a prior dependency case in 2000. The social worker opined that it would be highly unlikely that the paternal grandmother would be approved, given her background.

*De Facto Parent Requests and Section 388 Petitions*

The paternal grandmother and the paternal aunt (the relatives) filed de facto parent status requests for both children on October 17, 2013. They alleged that R.F. lived with

6

them, and they had responsibility for his day-to-day care from July 5, 2012, to March 6, 2013. Regarding C., the relatives alleged that he had lived with them, and they were responsible for his daily care from January 12, 2010, to August 15, 2011, and December 3, 2011, to March 6, 2013. They alleged that they did "everything together."

On the same day they filed the de facto parent requests, the relatives filed a section 827 request for the disclosure of the juvenile case files, as well as section 388 petitions. The section 388 petitions essentially alleged that the children had lived with the relatives most or all of their lives, and that they should be returned to them, rather than remain in their current placements.

On October 31, 2013, the court ordered a hearing on the de facto parent requests for November 14, 2013. On the same day, the court summarily denied the section 388 petitions. The court also ordered the social worker to update the court on the status of the assessments on the relatives at the November 14, 2013 hearing.

At the November 14, 2013 hearing, the court noted that it had denied the section 388 petitions, and then asked for a status update as to the assessment of the relatives. County counsel informed the court that CFS never received the section 388 petitions, so it did not have any updates in writing; however, county counsel offered to give a verbal update. The court agreed. County counsel informed the court that it was likely that the relatives would be denied placement since they both had extensive CFS histories and criminal histories that would require exemptions. County counsel opined that it was unlikely that the exemptions would be granted, and that, even if they were, the social

7

worker's view was that it was not in the children's best interests to place them with the relatives. County counsel added that the children were in a concurrent planning home together. The court continued the de facto status request hearing.

On December 5, 2013, the social worker filed an interim review report recommending that the court deny the de facto parent requests. The social worker opined that it was not in the children's best interests for the relatives to be given de facto status. They were not appropriate caregivers, since they both had child welfare histories and criminal histories. The aunt had been charged with being under the influence of a controlled substance on 16 occasions. Her most recent arrest occurred on November 3, 2013, for possession of drug paraphernalia. She had been charged with possession of drug paraphernalia on at least three other occasions. The aunt also had been charged with driving under the influence on two occasions, as well as with resisting arrest and attempted burglary. The paternal grandmother had been charged with child endangerment and assault and battery. The social worker noted that the paternal grandmother did provide care for the children in her home, approximately in July 2012, but that she allowed the parents to reside in her home as well. The paternal grandmother previously reported that she witnessed regular domestic violence between the parents while they resided in her home, and that she knew the parents used illicit substances. In addition, the paternal grandmother failed to protect the children when she allowed the parents to take them from her home, and the children subsequently suffered severe injuries. Furthermore, the social worker reported that the relative approval worker

informed her on December 3, 2013, that the home of the paternal grandmother was formally denied for relative placement.

On December 9, 2013, the court held a hearing on the requests for de facto parent status. The paternal grandmother testified that she raised C. all of his life, with the exception of six or seven months. She also said that the parents were living with her when C. was five months old. The paternal grandmother stated that R. lived with her every day of his life, until he was taken by father on March 6, 2013. The court asked if she called the authorities when the parents came to take the children in March. She said she called 911, but "the lady" said she could not report a kidnapping since the parents were the legal parents of the children. The court noted that the relatives had played a parental role in the children's lives for a substantial period of time. It then stated that the only issue of concern was the failure to protect. The paternal grandmother interjected that it was not her place to protect the children because the parents had custody of them. The court denied the relatives' de facto requests relying on *In re Merrick V.* (2004) 122 Cal.App.4th 235 (*Merrick V.*). The court stated that it understood the relatives wanted to be sure that the children were safe and well-provided for. The court said it was satisfied that the children were being cared for in their current placement. The court further denied the section 827 requests for disclosure of the juvenile files, since the relatives were not parties to the dependencies.

The court immediately proceeded to the section 366.26 hearing and found it likely that the children would be adopted. It then terminated parental rights and ordered adoption as the permanent plan.

## ANALYSIS

### The Court Properly Denied the Section 388 Petitions

The relatives argue that the juvenile court erred in denying them an opportunity to be heard on their section 388 petitions. The aunt claims that they established a prima facie case in presenting new evidence of medical neglect by the current foster parents, evidence that she and the paternal grandmother had cared for the children for a significant portion of their lives, and changed circumstances regarding her position to safely care for the children. The aunt also claims that she showed that removal from the foster parents and placement with her and the paternal grandmother was in the children's best interest. The paternal grandmother similarly claims that the petitions alleged "vast changes" in her life since the earlier referrals, that C. was never treated for a broken leg, and that she and the aunt had bonds with the children. The paternal grandmother also appears to claim that she and the aunt were seeking placement pursuant to section 361.3, but were never evaluated; thus, the court erred in refusing to hear evidence at a section 388 hearing relating to the appropriateness of such placement, and then erred in "permit[ting]" CFS to deny them placement. We conclude that the court properly denied the section 388 petitions.

10

A.  *The Section 388 Petitions*

The relatives filed joint section 388 petitions asking the court to remove the children from their current placements and return them to their home.  As to changed circumstances with regard to R., the relatives alleged that they had been at previous court hearings but were not allowed to speak; thus, the court was not aware of their close bonds with R., or that he had lived with them all his life.  They alleged that they had completed a home inspection and life scans since the court took jurisdiction of R.  As to best interest of the child, the relatives alleged that R. suffered severe emotional and physical trauma when he was removed from their home, and that he would benefit from having the aunt's emotional support, since they were bonded as mother and son.

In the section 388 petition regarding C., the relatives alleged as to changed circumstances that the court was not aware of their close bonds with him or that he had lived with them all his life.  They also alleged that they had completed a home inspection and life scans since the jurisdiction hearing, that his medical needs had been grossly neglected, and that they would attend to C.'s medical needs with urgency and efficiency. As to best interest of the child, the relatives alleged that it would be emotionally comforting for C. to be at home with family, that he has the inalienable right to be raised by his family, and that he displayed symptoms of separation anxiety when he was one year old.  The relatives also filed an attachment with the petition, alleging that the current foster parents had displayed indifference and poor judgment regarding C.'s medical care concerning his leg fracture.

11

On October 31, 2013, the court summarily denied the relatives' section 388 petitions since they did not state new evidence or a change of circumstances, and the proposed change of order did not promote the best interest of the children. The court also ordered the social worker to update the court on the status of the assessment of the relatives at the hearing on November 14, 2013.

B. *The Court Properly Denied the Petitions*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.] [¶] However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G*).) "'We review the juvenile court's summary denial of a section 388 petition for abuse of discretion.' [Citation.]" (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079 [Fourth Dist., Div. Two].)

The court did not abuse its discretion in denying the section 388 petitions based on the absence of changed circumstances or the children's best interest. The section 388

12

petitions sought the return of the children to the relatives' home. However, the paternal grandmother had an extensive child welfare history, which included over 20 referrals from 1994 to 2009. She also had a prior dependency case in 2000. She had a criminal history that would require a criminal exemption. The paternal aunt also had a child welfare history and criminal history. She had been charged with being under the influence of a controlled substance on 16 occasions and possession of drug paraphernalia on at least three other occasions. The aunt also had been charged with driving under the influence on two occasions, as well as with resisting arrest and attempted burglary. Moreover, the section 388 petitions did not demonstrate changed circumstances. Even if they had, there was no showing whatsoever of how the best interest of the children would be served by depriving them of a permanent, stable home, in exchange for an uncertain future. (See *In re C.J.W.*, *supra*, 157 Cal.App.4th at p. 1081.) The record showed that the children were in a home where they were secure and being taken care of, with prospective adoptive parents who were committed to providing them a permanent home. Since it did not appear that the best interest of the children would be promoted by the proposed change of order, there was no need for the court to order a hearing on the petitions. (*Zachary G.*, *supra*, 77 Cal.App.4th at pp. 806-807.)

We note the relatives' additional claims that they were denied relative placement under section 361.3 without ever being evaluated, and that they "could not intelligently address the Department's concerns without at least limited access to the record." They further argue that they were denied due process by not being permitted access to the

juvenile court records.  The court properly denied their request for access to the juvenile court records since they were not parties to the case.  (§ 827.)  Moreover, contrary to the relatives' claim, the record reflects that CFS did an exhaustive evaluation of them for placement.  The paternal grandmother's home was consequently denied for relative placement.

DISPOSITION

The order denying the relatives' section 388 petitions is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST      <br>Acting P. J.

We concur:

McKINSTER           <br>               J.

CODRINGTON         <br>               J.