Filed 12/7/20  In re A.H. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B300604 consld. with B302214<br><br>(Los Angeles County Super. Ct. Nos. CK81609, CK81609A, CK81609B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.H.,<br><br>Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

On page 31, the last sentence of the first paragraph, that begins "Mother has not cited any authority" add "directly" after authority and add the following to the end of the sentence: , but she asserts that a parent's right to counsel in section 317, subdivision (d) could be interpreted to apply in such a situation. The sentence now reads:

Mother has not cited any authority directly addressing whether a parent continues to be entitled to counsel where, as here, the juvenile court has terminated jurisdiction, but she asserts that a parent's right to counsel in section 317, subdivision (d) could be interpreted to apply in such a situation.

The Petition for Rehearing is denied.

_____
MANELLA, P.J.              WILLHITE, J.              COLLINS, J.

Filed 11/24/20  In re A.H. CA2/4 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B300604 consld. with B302214<br><br>(Los Angeles County Super. Ct. Nos. CK81609, CK81609A, CK81609B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>J.H.,<br><br>      Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Phillip L. Soto, Judge.  Affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

---

## INTRODUCTION

These consolidated appeals are the fourth and fifth appeals by mother Jennifer H. (mother) from juvenile court orders involving mother's two children, A.H. and G.H. In February 2015, the juvenile court sustained a petition alleging that mother had a history of untreated mental and emotional issues, including bipolar disorder with psychotic features, that rendered her incapable of providing the children with regular care and supervision. In September 2017, reunification services for mother were terminated. In June 2018, the juvenile court ordered legal guardianship with the maternal grandparents as the permanent plan for the children, and terminated juvenile court jurisdiction.

Since then, mother has filed at least nine separate petitions under Welfare and Institutions Code section 388[1] seeking to regain custody of the children, or in the alternative, expand her visitation with the children to include unmonitored visits. In each of her petitions, mother has asserted that the children are being abused by maternal grandparents, and mother is mentally healthy and ready to offer the children a loving home. Mother's

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

allegations of abuse have never been substantiated.  The juvenile court has denied each of mother's petitions.

In the current appeals, mother asserts that the juvenile court erred in failing to appoint counsel to represent her at hearings on two of her section 388 petitions.  The Los Angeles County Department of Children and Family Services (DCFS) contends that even if the juvenile court erred, any such error was harmless because mother's section 388 petitions nevertheless would have been denied.  We agree, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Facts from opinion in prior appeal B285626

Extensive background facts are discussed in our opinion addressing mother's prior writ petition challenging termination of reunification services, *J.H. v. Superior Court* (Mar. 14, 2018, No. B285626 [nonpub. opn.]).  In brief, A.H. was first declared a dependent of the juvenile court shortly after her birth in 2010 when mother had a postpartum psychiatric episode.  A petition under section 300 was sustained, and the case was later terminated. G.H. was born in 2012, and two months later the children became dependents of the juvenile court after mother had another psychiatric episode.  The children were placed with paternal grandparents.  After another juvenile court case was initiated, in April 2015 the children were placed with mother, who lived in maternal grandparents' home.

Mother's care for the children was short-lived. DCFS sought to remove the children from mother in October 2015, but the court denied that request.  Following another request, the children were removed from mother's care in January 2016 and placed into foster care.  In August 2016, the juvenile court sustained DCFS's petition under section 300, subdivision (b),

3

which alleged that mother's bipolar disorder, paranoia, and delusions endangered the children's health and safety and placed the children at risk of physical harm.

As discussed at length in our previous opinion, mother has an extensive history of reporting that the children are being threatened, physically abused, and/or sexually abused. Before the children were placed with her in April 2015, mother alleged physical or sexual abuse by maternal grandfather, the children's father, the children's babysitters and daycare workers, and the other children at daycare. While the children were in mother's care, she took them for multiple forensic examinations and repeatedly told DCFS and the Los Angeles Police Department (LAPD) that the children were being abused, and that maternal grandparents were threatening the children and mother. After the children were removed from mother's care in January 2016, mother accused maternal grandparents, the children's father, foster parents, and DCFS of physically and sexually abusing the children. Mother's aggressive behavior toward foster families, including repeated calls to the families and allegations of abuse, caused the children to be re-placed several times. The court ordered mother to stop calling DCFS's child abuse hotline, but mother disobeyed the order and continued reporting abuse. Mother sent long letters to the court with allegations that the children were being harmed, and asked the court to place the children with her.

Reunification services for mother were terminated in September 2017. On appeal, we found the court's order to be supported by substantial evidence.

4

**B.    Facts relevant to prior appeal B290483**

Following a section 388 petition filed by maternal grandparents, the children were placed in maternal grandparents' home in August 2017.  Mother filed a section 388 petition on October 19, 2017, asking the court to reinstate reunification services and return the children to mother's care, or in the alternative, liberalize mother's visitation to include unmonitored overnight visits.  The court set a hearing on mother's petition.  The hearing was continued multiple times, to May 24, 2018.

On March 27, 2018, mother filed another section 388 petition characterized as an ex parte request, asking for liberalized visitation with the children.  The court summarily denied the petition, finding that the change would not be in the best interest of the children.

On May 24, 2018, DCFS filed an ex parte application seeking a restraining order protecting the children from mother, and an order that mother's visits take place at the DCFS office, to be monitored by someone other than maternal grandparents.  DCFS reported that between May 10 and May 13, mother repeatedly reported to DCFS, to police, and on Facebook that the children were being abused by maternal grandparents.  On May 12 the social worker witnessed mother yelling outside of maternal grandparents' house saying to the children, "Tell the social worker the truth.  She's not here to hurt you. . . .  Tell her the truth about Papa" (maternal grandfather).  The children were yelling back, "[M]ommy stop lying.  Poppa doesn't hit us.  Mommy stop lying."  After mother agreed to leave the home, A.H. told the social worker, "I know [mother] is sick right now and this is what happens when she is sick.  My poppa would never hurt

5

us." On May 13, 2018, mother called adult protective services and alleged that maternal grandparents were abusing the maternal great-grandfather who lived in maternal grandparents' home. Maternal grandparents reported that on the night of May 13, 2018, mother came to their home and threw rocks at the house; she yelled, woke up neighbors, and threatened to call police on maternal grandfather. Maternal grandparents and neighbors called police; while mother was being arrested, she began fighting and kicking the police officer. Mother was arrested for battery on a peace officer, released on bail, then hospitalized.

On May 24, 2018, the court ordered that mother's visits occur in the DCFS offices, and ordered mother to stay 100 feet away from maternal grandparents' home. The court continued the hearing on mother's October 19, 2017 section 388 petition to June 6, 2018.

On June 1, 2018, DCFS filed an ex parte application to temporarily suspend mother's visitation until her mental health stabilized. DCFS reported that at a recent visit mother questioned A.H. about minor bruises, and A.H. told a social worker privately, "I think my mommy is still sick. I don't know what to tell her anymore because she doesn't believe me." Both children later said they did not want to visit with mother for the time being. Mother again reported to DCFS and LAPD that the children were being abused. Mother also went to the juvenile court on May 30, 2018 and "was knocking and banging on the door" to the courtroom. The professional monitor who had been monitoring mother's visits with the children said she would no longer serve as a monitor due to mother's threats against her. DCFS found no evidence that the children were being mistreated.

Mother, through counsel, filed a declaration repeating her allegations of abuse and conflicts with the professional monitor, who would not support mother's allegations of abuse. Mother also submitted a long email from mother to the court and an email from mother to children's counsel repeating her allegations.

On June 1, 2018, the court found that it was in the children's best interests for in-person visitation with mother to be suspended, and limited mother's visitation to professionally monitored telephone calls. On June 1, 2018, mother filed a notice of appeal. Mother's appellate counsel filed an opening brief under *In re Phoenix H.* (2009) 47 Cal.4th 835. This court dismissed mother's appeal on January 11, 2019.

## C. Facts relevant to prior appeal B294126

### 1. *July 6, 2018 section 388 petitions*

On June 6, 2018, the juvenile court ordered legal guardianship with maternal grandparents as the permanent plan for the children. The court ordered monitored visitation with mother by telephone only, and allowed maternal grandparents to liberalize visitation at their discretion. The court terminated jurisdiction. The same day, the court denied mother's section 388 petition filed October 19, 2017, noting that it was denied after a hearing.

On July 6, 2018, mother filed two section 388 petitions in propria persona seeking to change the court's June 6 order. The handwritten petitions are difficult to read, but appear to state that A.H. had bruises on her face and body from "Papa." On July 24, the juvenile court denied the petitions without a hearing, stating that the petitions were illegible. The court ordered mother to consult with her attorney, and, "If appropriate, counsel

7

for mother is to re-file typed WIC 388 petition on behalf of mother."

On June 26, mother's counsel filed a motion to be relieved as counsel, citing a breakdown in the attorney-client relationship. On August 7, 2018, the court granted mother's counsel's motion.

2. *August 7, 2018 section 388 petition*

On August 7, 2018, mother filed another section 388 petition in propria persona, stating that the children "continue to be covered from head to toe in bruises," and they were being "severely abused" by maternal grandparents. Mother asked that the children be removed from maternal grandparents' care and returned to her custody, or alternatively, that mother be granted unmonitored visitation. In a declaration attached to the petition, mother said her counsel told her that her section 388 petition "has great merit," but asked to be relieved as counsel because mother could no longer afford to pay for counsel. Mother stated that the "children continue to be covered in bruises, and scratches from head to toe, on a daily basis, EVERY TIME I SEE THEM." Mother said that G.H. begged her to call the police. Mother stated that the children "are being severely beaten, and emotionally abused, [as] well as sexually abused." Mother included photographs of A.H. and notes from mental health professionals stating that mother was in therapy and compliant with her medications. The court set a hearing on the section 388 petition.

On August 13, 2018, the juvenile court assigned attorney Ryan Matienzo to represent mother. The court ordered DCFS to investigate mother's allegations, and ordered mother's counsel to "submit additional documents in support of Mother's WIC388 petition by 9/19/18."

8

On August 22, 2018, mother through her counsel filed an emergency walk-on request asking for the court to consider moving the children from their "unsafe placement," and to grant mother unmonitored visitation. The court denied mother's request on August 28, 2018.

On September 19, 2018, DCFS filed a last-minute information stating that mother's claims of abuse were deemed unfounded, and the referral was closed. The last-minute information also stated that mother went to maternal grandparents' home on September 9 and "created a scene"; law enforcement was called. Maternal grandparents sought and received a restraining order requiring mother to stay away from the maternal grandparents' home and the children's school.

On September 27, 2018, the court ordered an evidentiary hearing on mother's section 388 petition, set for November 8, 2018. An interim review report filed October 31, 2018 stated that mother's allegations of abuse were deemed unsubstantiated. DCFS noted that various therapists regularly worked with the children in the home and expressed no concerns. G.H.'s behavioral therapist, who spent about eight hours a week in the home, "reported absolutely no concerns of abuse by maternal grandparents." DCFS also noted that mother submitted an audio recording of G.H. asking mother to call police. When asked about her statement, G.H. told DCFS, "Every time I have a visit with [mother], I don't feel safe. I think when the monitor is not looking, mommy can grab me. I want the police to check on me. I just wanted them to come." The interim review report stated, "Upon further investigation, it appears that due to the repeated calls and investigations to law enforcement, the child [G.H.] has developed a certain fondness of law enforcement, and enjoys

having them around." The interim review report stated in bold typeface: "The Department stresses to the Court that there is no substantial evidence of child abuse within this family." DCFS recommended that mother's section 388 petition be denied.

The interim review report also included a copy of a criminal court minute order stating that on July 12, 2018, mother was convicted of battery (Penal Code section 242) for the incident in May 2018 at maternal grandparents' home. The criminal court also ordered mother not to "harass or molest any person or witness involved in this case," to stay 100 yards away from maternal grandparents' residence, and enroll in and complete a one-year mental health counseling program. Also attached to the report was a petition for a restraining order filed by the City of Los Angeles seeking to restrain mother from contacting LAPD regarding her allegations of abuse. A declaration by the captain and commanding officer of the Devonshire Patrol Division, Paul M. Weber, stated that mother's repeated 911 calls, emails to police, voicemails, and in-person requests for assistance were "interfering with the operations of the Devonshire Patrol Division and its ability to timely respond to and address the needs of the public." Weber noted that mother called 911 54 times on August 8, 2018; he also attached some of mother's emails as exhibits. The interim review report noted that maternal grandparents now lived in Simi Valley, in Ventura County. The date of the move is not indicated in the record. Maternal grandfather reported that Simi Valley Police Department (SVPD) had been called on them about ten times so far.

At the hearing on November 8, mother was represented by counsel, and she testified. Mother admitted that maternal grandfather had a restraining order against her and she was

10

prohibited from going to the children's school.  However, when discussing difficulties regarding visits with the children, mother said, "I don't think that I'm the problem."  Mother said her recent hospitalization "wasn't for [the] psychiatric situation.  It was because I was homeless, and I literally had nowhere else to go."  Mother said she was no longer homeless; she was staying at a hotel.  On cross-examination, mother denied that she called police on maternal grandfather multiple times in a single day.

Counsel for the children and DCFS asked that mother's petition be denied.  Mother's counsel asked that the petition be sustained, and asked the court to "consider a home of parent order.  Nowhere in the evidence is there [anything] suggesting that my client has been inappropriate in regards to her children."  Mother's counsel asked in the alternative for overnight visits or unmonitored visitation.  The court denied mother's petition, stating, "It's clear from the documentation supplied to the court and from mother's testimony that circumstances have not changed in this case that would justify removing the children from the grandparents or changing the orders for visitation."  The court noted that the case was closed and jurisdiction was terminated.

Mother appealed the court's ruling.  Her appellate counsel filed a brief under *In re Phoenix H.*, *supra,*  47 Cal.4th 835.  Mother filed seven supplemental briefs.  This court dismissed mother's appeal on April 19, 2019.

D.    **Facts relevant to the current appeals, B300604 and B302214**

1.    *April 2, 2019 section 388 petition*

On April 2, 2019, mother filed a section 388 petition in propria persona asking the juvenile court to "return my children

11

to me."  In the section on the form asking about changed circumstances, mother wrote, "Since the court closed the case I have obtained appropriate housing to have both children returned to me.  I can also provide educational and well as health care for my children [*sic*]."  In the section asking why the change would benefit the children, mother wrote, "I am bonded to my children and they miss their mother very much.  As such, I am now in a position to have them in my care."

Attached to the petition was a single-spaced, four-and-a-half page letter from mother outlining the "many positive changes in my circumstances since the last time" she was in court, including obtaining housing.  Mother stated that although these things were positive, "[t]here are some negatives, and that is the unfortunate, ongoing abuse of my parents toward my children.  My children continue to be covered in bruises every time I see them. . . ."  Mother continued, "On February 11, 2019 I have very good reason to believe that my dad raped [A.H.]."  Mother said she contacted the SVPD, and officers questioned maternal grandparents and the children.  The police deemed the allegation unfounded, but mother insisted that the officers did not do an adequate job because they only questioned the children for "about a minute each," and "[t]hat is not how a child rape investigation is supposed to be done.  It was flawed."

Mother repeated many of her previous allegations about maternal grandparents, including that maternal grandfather raped mother as a child and that G.H. was at risk of being held back in first grade "because of her chronic problem of ongoing masturbation ALL DAY LONG in class."  Mother stated, "I have never been more stable, more calm, more steady, healthy and centered.  I know I have truth on my side . . . ."  Mother stated,

12

"My children belong with me, their healthy, stable, loving Mommy, who has never abused them, never abandoned them, never neglected them and does not drink alcohol or do drugs. . . . Please give my daughters the best chance at true happiness and the healthiest, most stable life they can have with me, their loving Mommy."

The court denied mother's section 388 petition ex parte[2] on April 11, 2019. Counsel for DCFS and the children were present; mother was not present. The court stated on the record and in its written order, "Mother's assertions have been discredited several time [*sic*] already in numerous, lengthy hearings. It has been explained to mother by the court several times that even if her allegations against the grandparents were true, that would not necessarily be grounds for return to mother given the facts and evidence proven against mother. It is not in the best interest of children to set a hearing." The court's minute order stated, "The 388 WIC petition filed April 2, 2019 is denied without hearing. [¶] Jurisdiction remains terminated."

2. *July 8, 2019 section 388 petition*

On July 8, 2019, mother filed another section 388 petition in propria persona, again asking for custody of the children. In

---

[2]Under California Rules of Court, rule 5.570, a court has four options for addressing a section 388 petition: it may (1) deny the petition ex parte (rule 5.570(d)), (2) "order modification without a hearing" if "all parties stipulate to the requested modification" (rule 5.570(f)), (3) "order that a hearing on the petition be held within 30 calendar days after the petition is filed" (rule 5.570(f)(1)), or (4) "order a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or denied" (rule 5.570(f)(2)).

the section of the form asking about changed circumstances, mother stated that she had a home and a job, and that she was "very healthy and stable." In the section asking why the change would benefit the children, mother wrote, "It would be better for my children because literally every time I see my children they have new bruises that they say they don't know where they got them from. They are learning about a satanic cult + mass destruction and evil people that want to take over the world." Mother's handwritten statement continued, and is marginally legible. It appears to state, "On July 2nd [G.H.] made up a song . . . 'you can punish me and abuse me . . . and I'll still love you . . . but I'll love you even more if you don't.['] [A.H.] sounded drugged and could barely speak. She said 'Call the police, call the fire department and say your daughter was raped.' Someone is sending me texts and pornographic pictures of [G.H.] from my mom's phone saying it's [G.H.] – but it's not." (Ellipses in original.) Six photos of a child are attached to the petition.

Mother submitted a two-page, handwritten letter with her petition, stating, "I am filing this emergency 388 because my children have let me know they are still not safe in the legal guardianship of my parents. They have let me know it's an emergency and they need to be rescued as soon as possible." Mother stated that maternal grandmother has both children "on ADD medication but they don't have ADD. [ ¶] [A.H.] has lost about 15 pounds and told me 'food is evil don't eat it.'" Maternal grandparents were "out of control! They cannot handle raising my two active girls" because they were "disabled with back and knee problems," and maternal grandmother "has collapsed about 8 times in this past year." Maternal grandfather lies in the children's beds with them to tell them bedtime stories, and when

14

mother tells maternal grandmother that she is uncomfortable about this, maternal grandmother "screams at me and tells me they like it." Mother closed the letter by stating, "I am the most loving guardian for them. Please give them back to me – so I may raise them in love – with no more abuse and toxicity. Thank you."

On July 12, 2019, the court addressed mother's section 388 petition ex parte. Counsel for DCFS was present; mother did not appear, and the court noted that counsel for the children was "out of town." The court stated on the record, "The court has made it clear numerous times over to these [*sic*] continued requests by mother that even if these allegations that she's making against the caretakers were to be true, that does not mean that she gets the children back." The court stated that the petition was denied without a hearing.

On July 22, 2019, mother filed a notice of appeal from an unspecified order in which "the judge denied my 388 petition w/out a hearing." This appeal was assigned number B300604. In her briefing on appeal, mother does not assert any errors with respect to the July 8 petition.

3. *July 22, 2019 section 388 petition*

On July 22, mother filed another section 388 petition in propria persona, again asking the court to return the children to her custody. In the section of the form asking about changed circumstances, mother noted her new home and her job, and stated, "My children reported being physically abused by my parents last May. They continue to be covered in bruises all over their body. My father sleeps in their beds with them every night." In the section asking why the change would benefit the children, mother wrote, in part, "I am stable, healthy, and young

15

and well.  My parents are 76 and disabled.  My mom shattered her knee and can barely walk.  I am the more '<u>fit</u>' healthy stable guardian for my children."

Mother attached a typewritten letter to her petition. She stated that her last two petitions were "denied on the spot without even giving us a court date to see what the true change of circumstances is and why my attorney and I feel more ready now than ever to be reunited with my precious daughters. . . ." Mother stated that the children "remain unsafe and abused by the maternal grandparents in their legal guardianship."  She wrote that the children "CONTINUE to be covered in multiple bruises ALL over their little bodies every time I see them," and their explanations don't "seem realistic."  Mother stated that maternal grandparents "have everyone working with them, the DCFS and Simi Valley Police."  Mother repeated her contention that G.H. once begged her to call the police.  Mother said her attempts to report abuse to Ventura County DCFS personnel had been unsuccessful, because they would not accept a report when they "know it is coming from me."  Ventura County DCFS instructed that mother's attorney should call them if needed, but mother stated, "I do not have an attorney at the time."

Mother continued, in bold typeface, "May I remind you that it was downright ILLEGAL for the DCFS to remove my children from my full custody and care in January 2016 when I had NEVER abused, neglected, or abandoned them . . . and when there were NO exigent circumstances."  (Ellipses in original.) Mother closed the letter by stating, "So, please take this as an emergency and grant us a hearing this week to protect my children and return them back into my full custody and care where they are praying and begging to be!"  Mother also attached

a short letter from Tarzana Treatment Centers dated May 23, 2019, stating that mother "enrolled in mental health services at Tarzana Treatment Centers on December 18, 2018," and mother "is very active in her treatment and consistently attends her weekly therapy sessions."

On August 19, 2019, the court—with Judge Craig S. Barnes presiding rather than Judge Philip L. Soto, who had heard the other portions of the case—addressed mother's section 388 petition. Mother, counsel for DCFS, and counsel for the children were present. Counsel for the children asked that the petition be denied, stating that mother's section 388 petition was filed in pro per in violation of the rules of court, and it was filed ten days after Judge Soto denied a nearly identical petition. The children's counsel also stated, "Mother has filed nine 388's since the case has closed." Counsel for DCFS joined these statements.

Mother asked to be heard. She stated, "There's been an ongoing child abuse case that's been denied by the judge. My father raped me. . . . And then three weeks before [the judge] gave them legal guardianship, my daughter reported being beat so badly by my dad that he made her want to die." Mother stated that the children were "covered in bruises," but mother was barred from calling the child abuse hotline. Mother said that maternal grandfather "forced my daughters to perform oral sex on him this weekend," which mother knew because the children FaceTimed her and said, " 'Mommy, don't say anything.' [¶] And she put the phone down. And it was my mom and my dad . . . sighing and making all kinds of sexual noises. [¶] And then I also have a disc of eight recordings where my daughter is reporting being beat so badly by my dad that it makes her want to die. My

17

mother hurting the children and them crying and saying: You're hurting me. You're hurting me. Please stop."

The court interrupted, and asked mother if she had any response to counsel's contention of "procedural and substantive objections." Mother stated, "I am allowed to file a 388 because I don't have an attorney. . . . [A]nd I don't have anybody to represent me, I am – I was told by the court that I am absolutely allowed to file a 388." Mother said that her nine previous section 388 petitions "should be a red flag" because "Judge Soto is not taking me seriously when I say that, as the mother, my children are being abused." Counsel for the children objected, and the court stated, "I think I've heard your argument, and so I'm prepared to rule. [¶] The court is going to deny the 388 on procedural, substantive grounds as set forth by minors' counsel. They are well-supported, and the basis for the 388 is not well-supported." The court's minute order stated, "The 388 WIC petition filed July 22, 2019 is denied after hearing. [¶] Jurisdiction remains terminated with Legal Guardianship and Kingap in place."

Mother filed a notice of appeal the same day, stating that Judge Barnes denied her section 388 petition despite telling him that maternal grandparents were abusing the children. This notice of appeal was assigned the same appellate case number as mother's appeal from her July 8 section 388 petition, B300604.

4. *August 26, 2019 section 388 petition*

On August 26, mother filed another section 388 petition in propria persona, again asking the court to return the children to her care. In the section of the form asking about changed circumstances, mother wrote, "Last Saturday my daughter placed down the phone and I witnessed auditorally [*sic*] my parents

18

sexually molesting (if not raping my children).  Police and DCFS refuse to investigate.  My children are in great danger.  I am healthy, stable, have a great job and great home.  I am ready for my daughters to come home to me."  In the section asking why the change would benefit the children, mother wrote, "It would be better because my parents are raping, beating + emotionally abusing my children.  They are suffering and failing in school.  My daughters belong with me and want to be with me.  It is our constitutional right to live together as a family."

Mother attached a single-page declaration stating, "I am writing this declaration to inform the Court as I have with my last nine 388 petitions that this is an EMERGENCY and my children are in imminent danger in the legal guardianship [of] the maternal grandparents."  Mother asserted that she had been punished for attempting to protect the children.  Mother added, "I could have gone to the Commission on Judicial Performance on you a long time ago for your gross judicial misconduct and abuse.  I have decided to give you one last chance before doing that to do what is right and just and protect my children and return them to my full custody and care as soon as possible."  Mother also included a letter from Tarzana Treatment Centers dated August 16, 2019, stating that mother was enrolled in mental health services and "is very active in her treatment and consistently attends her weekly therapy sessions."

The court, with Judge Soto presiding, addressed mother's 388 petition on September 9, 2019.  The court stated that this was "another in a string of 388's filed by mother trying to regain custody of [the children] with allegations against the maternal grandparents."  Counsel for the children noted that mother's new claim of hearing the maternal grandparents on the phone

19

sexually abusing the children arose following a separate incident in which at the end of a visit, mother "proceeded to say good-bye to the girls, forced them in the car and then she took off. The grandparents then called 911 at which point then mother turned around and dropped off the kids. So there have not been visits to the mother since then." The court asked if it was "an attempted kidnapping," and the children's counsel responded, "Essentially." The children's counsel also stated that the SVPD had received about 55 calls from mother alleging sexual abuse, and was "no longer responding to her calls." The police recommended that maternal grandparents "file a 388 to get stronger language on the visits" to protect the children, and the children's counsel stated that maternal grandparents were working on preparing something to file in Ventura County. Children's counsel added, "For the record, the mother sent me an e-mail and threatened me if I inform the court about the attempted kidnapping, she would report me to the state bar."

The court stated, "I think we all need it on the record in a hearing, and a statement from the grandparents of her attempting to kidnap the children and their response being that they curtailed her visitation orders and preparing a 388 of their own; and the statement from Simi Valley PD that because of the nature of mother's calls, they've stopped responding to her complaints." The court ordered an evidentiary hearing on mother's petition, scheduled for October 21, 2019. The court also stated in its minute order that DCFS was to "prepare a report addressing said petition," and, "Court is to be provided with statements from the Grandparents and Simi Valley police Sergeant Morray, in particular re: assertions by the

20

grandparents that Mother attempted to kidnap the minors, prior to visit. DCFS to also provide statements from Mother re: same."

On October 17, DCFS filed a last-minute information stating that the parties had been interviewed, but DCFS needed an additional two weeks to prepare the report due to the investigator being out on leave. At the originally scheduled hearing date of October 21, the court noted that counsel for DCFS and counsel for the children were present. Counsel for the children asked if he should go get mother, and the bailiff asked, "Where is Mr. Matienzo?" referring to mother's former counsel. The court responded, "He's not on the case anymore. This case is closed." The court noted that mother was present, and continued the hearing to November 8.

On November 1, 2019, DCFS filed its report. In her interview with the DCFS investigator on October 2, mother repeated her allegations about maternal grandparents being unfit guardians, including mother seeing bruises on the children. Mother said she had a recording of A.H. disclosing abuse, but when the investigator asked mother for it, mother refused to provide it because she would be "accused of coaching." Mother also said that a police officer agreed with her that the children were being abused, but when the investigator asked for the date of that discussion or the officer's information, mother could not provide those details. Mother said she visits with the children sporadically, and that maternal grandmother is the monitor. Mother said she had a paid monitor until about a month earlier. When the investigator asked for the monitor's phone number, mother said she could not provide it "because I'd have to sign a release. She makes me sign releases."

21

Mother repeated her allegation that she thought maternal grandfather was sexually abusing the children because on a "pocket call" she heard heavy breathing and what sounded like inappropriate contact. Mother said that both children "are now masturbating none stop [*sic*] by rocking back and forth in their chairs." Mother said it happens every day at school, and G.H. might be held back a grade as a result. Mother also stated that both children have boyfriends, but they are too young to have boyfriends. Mother told the investigator that she was concerned that maternal grandparents played an "alphabet game" with the children using letters to denigrate the children's father, such as "A is for asshole . . . B . . . C is for when he cut them . . . and so on."

Mother stated that she has had five involuntary hospitalizations, with the most recent in July 2019. Mother said she had been seeing a therapist for six years but they were "no longer seeing eye to eye." When the investigator asked mother for the therapist's contact information, mother said, "I'd rather not give you that." Mother also said she was no longer seeing her the psychiatrist she had seen for 18 years. Mother was in treatment at Tarzana Treatment Centers.

The investigator interviewed the children and maternal grandparents at their home. A.H., age 9, told the investigator that no one had ever touched her inappropriately, and she was disciplined by having her privileges taken away. She stated, "I know my mom always thinks that my grandparents hit us but it's not true . . . they never hit us." (Ellipses in original.) A.H. said that visits with mother occur in public places because mother is no longer allowed to come to the home. A.H. said that at the last visit, as they were walking to grandmother's car to leave, mother

22

"instructed the children to get into her car and sped off." A.H. reported that G.H. began crying because she was scared, and mother said she was taking them to the police station "to finally tell the truth." A.H. denied that grandparents played any alphabet game regarding father. A.H. said that she did have a boyfriend, but they do not kiss; they only hold hands and play video games together. A.H. said she wanted to continue living with maternal grandparents. The investigator observed "scattered bruising" on A.H., but no "visible marks or bruises on the children indicating abuse or neglect."

G.H., age 7, also told the investigator that that no one had ever touched her inappropriately, and she was disciplined by having her privileges taken away. She denied that maternal grandparents had ever hit her, and denied feeling uncomfortable around maternal grandfather. G.H. said she felt safe during visits with mother because maternal grandmother was there. She stated that she did not have a boyfriend, although she once pretended to when A.H.'s boyfriend was over for a play date. G.H. also denied that grandparents played an alphabet game regarding father. G.H. said she wanted to remain living with maternal grandparents.

Maternal grandparents told the investigator that they were concerned about mother's mental health. Although in the past mother had bipolar episodes and periods of stability, recently it seemed that mother had been unable to gain stability. Maternal grandparents stated that in July 2019, mother made eight police reports on the same day and called the children's school to report that maternal grandfather was a "pedophile." Maternal grandfather stated that mother also "made all sorts of sexual allegations" against him in the presence of the children and their

23

friends on the school campus. Maternal grandfather's restraining order against mother expired in October 2019.

Regarding the recent incident, maternal grandmother stated that as a visit with mother was ending, mother instructed the children to get into her car and then drove away. Maternal grandmother also stated that the children were active and would "bang up" their legs; mother often questioned the children about their bruises and then generated abuse referrals. Maternal grandmother said both children had been diagnosed with PTSD, and both were on medication for ADHD. Maternal grandparents acknowledged that the children had exhibited "sexualized behavior at school by rubbing on the chairs while in class," but both children had "grown out" of that behavior after being assessed for ADHD. Maternal grandmother stated that the school had not suggested that either child would be held back. Report cards for both children were included with the report, and both state that the children were doing well in school with no major concerns. Maternal grandparents acknowledged that A.H. had a boyfriend; they had play dates together and were supervised at all times.

On October 14, mother left voicemail messages for the DCFS investigator stating that she had just visited with the children, and "[t]hey were covered in bruises," and "I guarantee you that they are getting hit." Mother also said that G.H. had a raspy voice, which mother attributed to the children being yelled at by maternal grandparents and having to yell back to defend themselves. In a second voicemail, mother said that the children had bruises "all over their legs" and, "It really seems like my dad really wants to get caught because they were wearing the shortest shorts." Mother said she followed A.H. into the park

bathroom and tried to question her about the bruises, but maternal grandmother "stormed in" and stopped her. In a third voicemail, mother said that the children told her they want to testify in court to "tell [the judge] that we should not have been taken away from you and want to come home to you."

The DCFS investigator stated that she had left messages for the children's therapist and psychologist, and mother's therapist and psychiatrist, and was awaiting return calls. DCFS was also awaiting information from the SVPD.

DCFS stated that it "continues to have serious concerns regarding mother's mental health. The minors have endured continuous upheaval in their upbringing due to the mother's ongoing mental health issues, which render her incapable of providing stable care for the minors. Law enforcement has completed numerous welfare checks on the children and denied any concerns of abuse/neglect," and the children "den[ied] the allegations on numerous occasions." DCFS noted that mother had been hospitalized in July 2019, she attempted to kidnap the children in September 2019, and "[b]etween May 2018-September 2019, LA County and Ventura County DCFS have received approximately 48 referrals" resulting from mother's allegations. DCFS recommended that the petition be denied, because it would not be in the children's best interest to move them from their placement with maternal grandparents or to place them with mother.

At the hearing on November 8, 2019, counsel for DCFS and for the children appeared, and the court noted, "[B]ecause this is a closed case, mother is representing herself on the 388 that she filed for each child. . . ." The court denied mother's proffer of evidence, which included what mother described as

25

"inappropriate" videos posted on TikTok in which the children were "cursing saying all kinds of bad words and talking about their father."

Mother testified that "the reason why [the children] were taken away from me" the first time "was because I had a very strong reason to believe that my father sexually molested my daughter." Mother said that as soon as she voiced that concern, "basically, because I thought my daughter was molested by my dad, and I said that I was molested, suddenly I was delusional, and I got my kids taken away for two and a half years." Mother said that after the children were returned to her custody in 2015, she lived in maternal grandparents' home and "it was a toxic relationship between me and my parents. And that's why you [Judge Soto] put a stay away order there." Mother testified that her former attorney, hired by maternal grandparents, "wouldn't let me testify," and as a result, Judge Soto "never really had the full story." Mother recounted her version of the events in January 2016 that resulted in the children being detained from mother.

The court asked mother to focus on the allegations of her current section 388 petition. Mother stated, "[T]his is not about attacking my parents. It's about simply focusing on my fitness . . . my doctors are saying that I'm very healthy; that I'm very stable; and that I'm very capable of caring for my children and that my children should be returned to me." Mother stated that by contrast, maternal grandparents "are disabled. They have handicap placards. My mother fell into the pool at night. Almost drowned. Broke her knee. She can barely walk."

Mother continued, "I am not calling the police and saying 'For sure I know my kids are being abused.' [¶] I am calling them

26

and saying, 'Every single visit that I see my daughters, they have multiple bruises. . . .'" Mother said, "I'm so tired of this constantly being blamed on, '[Mother] having a mental health condition. [Mother] is mentally ill, because she's making calls.'" Mother said the children's and maternal grandparents' explanations about the bruises did not make sense. For example, A.H. takes dance classes, and "She's a graceful little girl. She's not falling all the time." But when mother asks the children about their bruises, "my mother, she screams, 'The visit's over. There you go again with your allegations again.'"

Mother also testified, "Now another thing that's concerning to me is that my children sleep in my parents' bed every single night, every single night." Mother wanted maternal grandfather to take the stand so she could question him about that, but the court denied her request. Mother also said that maternal grandfather "yells and screams at [the children] on a daily basis. My mother, there's never one time that they are on the phone with me that she's not yelling and screaming in the background." Mother said that she felt as if maternal grandparents "are in competition with me" and were trying to "show that they are better, they are smarter than me; that they can do a better job." But mother stated, "I am very capable of caring for my children. [¶] And I wasn't really given a fair chance."

The court asked counsel for the children if he had anything to add. Counsel noted the "extremely concerning" incident in September 2019 in which mother put the children in her car, saying she was going to take them to the police so they could disclose that they were being abused. Mother interjected that the children got into the car voluntarily, "And I did ask them. I said, 'Are you being –' [¶] It was our only time alone. I said, 'Are you

27

being abused?' I said, 'I will take you to the police station.'" But mother said that she did not "speed off," instead, "I went and parked the car. I did not go anywhere." The children's counsel stated that according to the DCFS investigator, the children "were fearful of what happened. We are asking to revert the visits to sole discretion of the grandparents, monitored by a professional monitor." Mother objected, stating that she could not afford a professional monitor, and stating, "All I can afford is one hour per week. Why do I have to be punished? I am being punished for trying to protect my children."

The children's counsel also noted that there had been 48 referrals to DCFS and Ventura County DCFS, and that the SVPD attempted to get a restraining order against mother. Mother interjected that the request had been denied. The children's counsel concluded that none of mother's allegations of abuse had been corroborated by any other sources. Counsel for DCFS did not assert any additional arguments.

The court began to state its findings from the bench. After being interrupted by mother twice, the court told mother that if she interrupted again, she would be removed. After mother interrupted a third time, the court ordered her out of the courtroom. After the bailiff removed mother, the court stated, "The court has throughout the pendency of the lawsuit . . . given mother every chance to keep the children or get the children back. [¶] It's clear to this court that this mother has mental health issues. . . . [¶] The claims that she's making are unfounded. The children are doing fine, better than fine. . . . [T]hey are doing well in school under the care of their grandparents, the legal guardians. . . . They do not want to return to their mother nor would it be in their best interest to do

so." The court therefore denied the section 388 petitions mother filed on August 26, 2019, stating, "There's no change in circumstances. It's not in the best interest of the children to terminate the guardianships or to return to mother." The court noted that jurisdiction remained terminated.

Mother filed a notice of appeal the same day, November 8, 2019. The appeal was assigned case number B302214. On July 20, 2020, we consolidated mother's two appeals.

5. *November 8, November 21, and December 9, 2019 section 388 petitions*

Later the same day, November 8, 2019, mother filed a new section 388 petition asking the court to terminate maternal grandparents' guardianship and award custody of the children to mother. On November 21, 2019, mother filed another section 388 petition, asking the court to terminate maternal grandparents' guardianship and award custody to mother, or to order unmonitored overnight visitation. Mother included two letters stating that she was in mental health treatment, as well as a declaration requesting appointment of counsel and accusing the judge of being biased against her.

On December 9, 2019, the court ex parte denied mother's section 388 petitions filed on November 8 and November 21. Mother, counsel for DCFS, and counsel for the children were present. Mother told the judge that she wanted an attorney to be appointed for her, and said she should have had an attorney at the November 8 hearing. The court allowed mother to state on the record similar allegations to those she made in previous petitions and at the November 8 hearing. Mother again asked for an attorney, and the court stated, "You did not ask for an attorney at the [November 8] hearing. . . . Unless and until I

29

reopen this case again, it remains in a closed status. The lawyer from the firm that had represented you before will not represent you unless I open the case again." The court found no basis to change its prior order, and therefore denied mother's November 8 and November 21 section 388 petitions. The court noted that jurisdiction remained closed, and mother's visitation was to continue to be monitored. Mother filed a notice of appeal the same day, which was included with case number B302214.

The same day, December 9, mother filed another section 388 petition asking the court to terminate maternal grandparents' guardianship and award custody to mother, or to order unmonitored overnight visitation. No court order addressing the December 9 section 388 petition is included in the record on appeal. Mother filed another notice of appeal on December 11, 2019, which does not indicate the date of the court's order mother was appealing from; it was assigned to case number B302214. On appeal, mother does not assert any errors with respect to the section 388 petitions filed on November 8, November 21, or December 9, 2019.

## DISCUSSION

In her two appeals, which were consolidated after briefing, mother asserts that the juvenile court erred by failing to appoint counsel to represent her at the August 19 hearing before Judge Barnes and the November 8 hearing before Judge Soto. A juvenile court is required to appoint counsel for a parent "[w]hen it appears to the court that a parent . . . is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, . . . unless the court finds that the parent . . . has made a knowing and intelligent waiver of counsel as provided in this section." (§ 317,

30

subd. (b).) "Counsel shall represent the parent . . . at the detention hearing and at all subsequent proceedings before the juvenile court." (*Id.*, subd. (d).) In addition, "At each hearing, the court must advise any self-represented child, parent, or guardian of the right to be represented by counsel and, if applicable, of the right to have counsel appointed, subject to a claim by the court or the county for reimbursement as provided by law." (Cal. Rules of Court, rule 5.534(c).) Mother has not cited any authority addressing whether a parent continues to be entitled to counsel where, as here, the juvenile court has terminated jurisdiction.

Mother asserts that the court ordered evidentiary hearings on her section 388 petitions filed July 22 and August 26. Noting the mandate that "Counsel shall represent the parent . . . at the detention hearing and at all subsequent proceedings before the juvenile court" (§ 317, subd. (d)), mother asserts that the juvenile court erred by failing to appoint counsel to represent mother at those hearings.[3]

Mother relies on *In re J.P.* (2017) 15 Cal.App.5th 789, which involved a juvenile court case spanning several years. At one hearing in which the court ordered the child moved from

---

[3]Although Judge Barnes stated that mother's section 388 petition was denied "after a hearing," no separate hearing was ordered, and thus it is not evident that the court conducted an evidentiary hearing pursuant to Cal. Rules of Court, rule 5.570(f)(1), or even "a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or denied" (rule 5.570(f)(2)). In her opening brief, mother asserts that the August 19 court appearance constituted a "hearing" rather than an ex parte denial. However, the distinction is not relevant to our analysis.

31

placement with his legal guardians to a group home, the juvenile court also relieved the mother's counsel for reasons that were not clear from the record. (*Id*. at p. 793.) More than two years later, the mother filed a section 388 petition requesting the appointment of counsel, family reunification services, and increased visitation with the child. (*Ibid*.) The court set a hearing on the mother's section 388 petition, but did not appoint counsel for the mother. (*Id*. at p. 794.) Following the hearing at which the mother appeared in propria persona, the court partially granted the mother's motion, but did not grant her the unmonitored visitation she requested. (*Id*. at p. 795.)

The mother appealed, asserting in part that the juvenile court erred by failing to appoint counsel for her before the hearing. (*In re J.P., supra,* 15 Cal.App.5th at p. 795.) The Court of Appeal agreed that the court erred, noting, "'There is nothing vague or ambiguous about the legislative command—in the absence of a waiver, the juvenile court must appoint an attorney to represent an indigent parent at the detention hearing and at all subsequent proceedings, and the attorney *shall* continue to represent the parent unless relieved by the court upon the substitution of other counsel or for cause.'" (*Id*. at p. 796, quoting *In re Tanya H*. (1993) 17 Cal.App.4th 825, 829.) The court held that reversal was warranted, because the "failure to appoint counsel for mother deprived her of her due process right and prejudicially affected the manner in which the section 388 hearing was conducted." (*In re J.P., supra*, 15 Cal.App.5th at p. 800.) The court noted that the "[t]he facts concerning changed circumstances and the benefit to [the child's] well-being strongly favored mother's request for more liberal visits," but at the hearing, "counsel for DCFS dwelled on mother's past conduct and

32

the reasons the juvenile court sustained the dependency petition in the first place." (*Id*. at p. 800.) The court continued, "Had the court appointed counsel to represent mother, that attorney could have kept the hearing focused on the matters at issue in a section 388 hearing: changed circumstances and the best interests of the child." (*Id*. at p. 801.)

Here, mother asserts that "[a] similar result is required in the present case," and the appointment of counsel "was critical to protect mother's interests." She argues that "[a]ppointed counsel would have been better equipped" to make mother's arguments and present her evidence.

DCFS contends that even assuming the court erred, any such error was harmless. Indeed, "[t]he harmless error standard has long applied to an appellate court's review of the denial of a parent's statutory right to counsel." (*In re J.P., supra*, 15 Cal.App.5th at p. 797.) Thus, a "parent must demonstrate that it is 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1668, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

We agree mother has not demonstrated on appeal that a more favorable result would have occurred had the court assigned counsel to mother. "A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

Here, mother could not meet this burden. Mother filed her July 22 petition the same day the court denied a nearly identical

petition filed on July 8. In the petitions mother filed on July 22 and August 26, mother requested that the children be returned to her care because the children were in danger with maternal grandparents, and that mother was stable and healthy. However, the record makes clear that mother's suspicions of abuse have never been substantiated by any source, including the children themselves, maternal grandparents, DCFS, two different police departments, and the children's therapists. The evidence showed that the children were thriving in maternal grandparents' care, were healthy and happy, and were doing well in school.

In addition, mother's insistence that she was stable and ready to parent the children is not supported by the record. Mother continued filing section 388 petitions based on the same allegations, despite a lack of evidence supporting her claims and despite the repeated denials of those petitions. Maternal grandparents had an active restraining order against mother when she filed her July 22 and August 26 petitions. During a visit in September 2019, mother instructed the children to get into her car so she could drive them to the police to report abuse. Mother continued to insist that she never harmed the children, demonstrating a lack of insight into how her behavior affects the children. In short, nothing in the record supports a finding that changed circumstances existed or that removing the children from maternal grandparents' guardianship or placing them in mother's care would be in the children's best interest.[4]

---

[4]DCFS notes that in *J.H. v. Superior Court* (Mar. 14, 2018, No. B285626 [nonpub. opn.], we stated that the evidence showed that "mother has been unable to be appropriate as a parent. She

Mother also contends the juvenile court erred to the extent it denied mother's July 22 section 388 petition "on the procedural grounds that she filed the petition[ ] in pro per." The court stated that it denied mother's petition on both procedural and substantive grounds. Thus, even assuming the court erred in denying the petition on the procedural basis that mother filed it in propria persona, mother has not suggested any error regarding the court's denial of the petition based on the petition's substance. Mother therefore has not demonstrated that any error warrants reversal.

Thus, mother has not demonstrated a miscarriage of justice as to any errors with respect to her section 388 petitions filed on July 22 and August 26, 2019.

## DISPOSITION

Affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

---

has seriously damaged the children's relationships with their grandparents through accusations, paranoia, and delusions." DCFS argues that this constitutes "law of the case," which "must be followed." This is incorrect. "The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress.'" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893.) Our previous statement was not a rule of law, and any findings based on facts before us in a previous appeal do not control findings based on facts arising later.

35

We concur:



MANELLA, P. J.



WILLHITE, J.